In the Matter of the Application of GEORGE W. MORGAN, as State Superintendent of Elections for the Metropolitan Elections District, Respondent, to Strike from the Register of Electors the Name of PATRICK FUREY, Appellant.

1. CONSTITUTIONAL LAW — HOME RULE PROVISIONS NOT APPLICABLE TO NEW OFFICES — STATE SUPERINTENDENT OF ELECTIONS. The purpose of the so-called home rule clauses of the Constitution (Art. 10, §§ 1, 2) was to preserve to the people of the local divisions of the state the power to select such local officers as they had theretofore selected, but not to

give them the right to select new officers, even if their duties are local, providing their functions are new and the functions of existing officers are not interfered with.

2. State Superintendent of Elections — Office New in Name and Functions.  The office of state superintendent of elections created by the Metropolitan Elections District Law (L. 1898, ch. 676; L. 1905, ch. 689) is new in name and essentially new in functions; the legislature, therefore, was authorized to provide for appointment of its incumbent by the governor instead of by some local authority and the law in that particular is a valid exercise of legislative power.

*Matter of Morgan* v. *Furey*, 114 App. Div. 127, affirmed.

(Argued October 1, 1906; decided October 16, 1906.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 21, 1906, which affirmed an order of Special Term granting an application to strike the name of Patrick Furey from the register of electors.

The facts, so far as material, are stated in the opinion.

*R. Burnham Moffat* for appellant.  The duties imposed and the powers conferred by the act upon the state superintendent and his deputies are those of existing offices which the Constitution prescribes may be filled only by the vote of the electors or upon appointment by the authorities of the locality affected. ( *Warner* v. *People*, 2 Den. 272.)  The act does not create a "new" office within the meaning of the Constitution, so as to permit the same to be filled by central authority. ( *People* v. *Draper*, 15 N. Y. 532; *People* v. *Pinckney*, 32 N. Y. 377; *People* v. *Raymond*, 37 N. Y. 428; *Met. Bd. of Health* v. *Heister*, 37 N. Y. 661; *People* v. *Albertson*, 55 N. Y. 50; *Matter of Brenner*, 170 N. Y. 185; *Matter of Allison* v. *Welde*, 172 N. Y. 421; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Warner* v. *People*, 2 Den. 272.)  The creation of an artificial district or division of the state for the purpose of vesting in a state official the functions and duties of an office which the Constitution prescribes shall be filled only by the locality, is an unlawful assumption of power by

the legislature. The legislature cannot do indirectly what the Constitution prohibits it from doing directly. (*Draper Case*, 15 N. Y. 532; *People* v. *Pinckney*, 32 N. Y. 377; *People* v. *Shepard*, 36 N. Y. 285.; *Bd. of Health* v. *Heister*, 37 N. Y. 661; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People* v. *Raymond*, 37 N. Y. 428; *Rathbone* v. *Wirth*, 6 App. Div. 277; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Matter of Brenner*, 170 N. Y. 190; *Matter of Allison* v. *Welde*, 172 N. Y. 426.)

· *Julius M. Mayer*, Attorney-General (*Danforth E. Ainsworth* of counsel), for respondent. · The legislature had the power to create this election district, and the act creating the same is constitutional. (*People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *People* v. *Pinckney*, 32 N. Y. 377; *People ex rel. McMillan* v. *Shepard*, 36 N. Y. 285; *People ex rel. Taylor* v. *Dunlap*, 66 N. Y. 162; *Board of Excise* v. *Barrie*, 34 N. Y. 657; *People ex rel. Henderson* v. *Bd. of Suprs.*, 147 N. Y. 1; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417.)

VANN, J. This proceeding was commenced by an order requiring one Patrick Furey to show cause before a Special Term of the Supreme Court why his name should not be stricken from the register of electors of the 34th election district of the 32nd assembly district of the county of New York. Upon the return day of the order to show cause the application was granted and an appeal was thereupon taken to the Appellate Division, which affirmed the action of the lower court, one of the justices dissenting. The order of affirmance is now before us for review and the only question which the parties ask us to decide, all others having been expressly waived, is whether the Metropolitan Elections District Law violates the home rule provisions of the Constitution. The first statute relating to the subject was passed in 1898, but the amended act of 1905, which is a re-enactment with changes and additions, is the one now in force. (L. 1898,

ch. 676; L. 1905, ch. 689). The provisions of the Constitution involved are sections one and two of article ten, which relate to what is known as "home rule."

The act creates "a metropolitan elections district for the purpose of all elections for state officers," composed of the counties of New York, Kings, Queens, Richmond and Westchester. The governor is required to appoint an officer "to be known as 'the state superintendent of elections for the metropolitan elections district.'" That officer is authorized to appoint deputies, the same number from each political party, who, by his direction or on their own motion or on complaint of any citizen of the state, may "investigate all questions relating to registration of voters, and for that purpose * * * have power to visit and inspect any house, dwelling, building, inn, lodging-house or hotel within the metropolitan district and interrogate any inmate, housedweller, keeper, caretaker, owner, proprieter or landlord thereof or therein as to any person or persons residing or claiming to reside therein or thereat." A deputy may "arrest any person without warrant who in his presence violates or attempts to violate any provision of the election law or the penal code relating to crimes against the elective franchise." He may "execute warrants of arrest and take into custody the person or persons named in such process; inspect and copy any books, records, papers or documents relating to or affecting the election or registration of electors," and "require every lodging-house keeper, landlord or proprietor to exhibit his register of lodgers therein at any time." The state superintendent is given power to issue subpœnas "for the purpose of investigating any matter within his jurisdiction and aiding him in enforcing the provisions of" the act; to administer oaths and take depositions "in all matters pertaining or relating to the elective franchise," and with his deputies to attend elections, an equal number from each of the leading political parties being assigned to each polling place, and "during the election to preserve order and arrest any person violating or attempting to violate the" laws relating to registration and

elections. It is made the duty of lodging-house and hotel-keepers in the metropolitan elections district to keep a register of the names and residences of their guests and the date of their arrival and departure, with a description of the physical peculiarities, place of nativity, occupation and place of business of each. The superintendent may require the chief of police and the heads of the building, fire and health departments to make certain reports to aid him in enforcing the laws passed to prevent fraudulent voting. The boards of inspectors of each election district are required to report to the police at the close of each day's registration the name of each person enrolled, and the police are required to forthwith deliver the same to the state superintendent at his office. The superintendent and his deputies are clothed with the powers of peace officers for the purposes of the act. All salaries and other expenses of carrying the act into effect are paid by the state, and the superintendent is required to make an annual report to the governor of various facts relating to the administration of his office. The act contains other provisions which set forth in great detail the means and method by which the superintendent is empowered to investigate the right to registration of persons whose names appear upon the registry, but enough has been stated to show the general purpose of the statute.

The only question now before us for decision is whether this act violates the principle of home rule as embodied in the Constitution. Whether certain provisions thereof infringe upon personal rights, or encroach upon the Constitution in any respect other than the single one named, are withdrawn from our consideration by the action of the parties.

The particular in which it is claimed that the statute violates the Constitution is through the power conferred upon the governor to appoint the state superintendent instead of requiring his appointment by some local authority. The superintendent, however, is not named in the Constitution, and the essential, as contrasted with the incidental functions of that officer, were unknown when the Constitution was adopted.

The office is new not only in name, but in the nature of the powers and duties belonging thereto, and, hence, according to the express command of the fundamental law, may be filled through an election by the people or appointment by such authority " as the legislature may direct." The state superintendent might with propriety be called the investigator of registration, for the primary object of the office is to investigate the right of persons enrolled as electors to be registered and to vote at any state election. He may be regarded as an agent of the state with reference to a subject of general interest to the state. His powers and duties are limited to the investigation and prevention of fraud in registering and voting throughout a large district, where the evil is hard to contend with owing to the extensive floating population and the frequent changes of residence. General supervision through a well-equipped central office by an officer who has in view the names and a personal description of all who are registered at the various polling places throughout the entire district, would naturally lead to discoveries beyond the power of the most diligent election officer with only a limited territory under observation. He is able to make investigations, compare records and apply tests previously unknown, because he has before him the entire registration of the most populous part of the state. This power is purely original, for it had never been exercised before. No right, power or emolument is taken from any local officer and conferred upon the superintendent or his deputies; and while they are authorized to exercise certain powers belonging to existing officers, it is only for the purpose of aiding them in executing their main powers. The power to investigate all questions relating to the registration of voters throughout five counties, and for that purpose to visit and inspect hotels and lodging houses, and to interrogate the inmates and proprietors as to the residence of persons claiming to reside therein ; to require landlords to exhibit their register of lodgers ; to inspect and copy books and papers relating to the registration of electors ; to issue subpœnas and make examinations under oath with reference to matters

relating to the elective franchise; to require sworn statements from all who keep hotels and houses of entertainment, naming and identifying by description all persons who claim a voting residence therein; to require reports from all officers whose duties make them familiar with the places where people live, and other powers of like nature, are new and characterize the office as new, with functions and purposes unknown prior to the passage of the act. Such powers had never been conferred upon any officer before, and hence the legislature was authorized by the Constitution to provide for the appointment of the state superintendent by the governor. (*People ex rel. Metr. St. Ry. Co.* v. *State Bd. of Tax Comrs.,* 174 N. Y. 417.) It is unnecessary to review the authorities, for they are all reviewed in the case cited, which is the latest general expression by this court of its views upon that part of the Constitution now under consideration. Mr. Lincoln's valuable History of the Constitution may be consulted to advantage by any one who wishes to make an exhaustive examination of the subject. (Vol. 4, p. 733.)

The validity of the act does not depend upon the creation of a new civil division embracing several counties, for it would be valid had it been limited to the city of New York or the county of Queens. The powers and duties of an officer may be purely local, but if the office is new in object and function it need not be filled by local authority. The purpose of the Constitution was to preserve to the people of the local divisions of the state the power to select such local officers as they had theretofore selected, but not to give them the right to select new officers even if their duties are local, providing their functions are new and the functions of existing officers are not interfered with. (*Matter of Brenner,* 170 N. Y. 185; *Matter of Allison* v. *Welde,* 172 id. 421.) These cases show how the Constitution affects local offices under varying circumstances. In the *Brenner* case the act was adjudged invalid because there was an existing officer in the county of Kings who exercised the powers of commissioner of jurors which was, therefore, not a new office. In the

*Allison* case there was no existing officer in the county of New York who exercised the powers of commissioner of jurors which was hence held to be a new office, and the act was sustained.

We think the statute, so far as challenged upon this appeal, is a valid exercise of legislative power and the order appealed from should, therefore, be affirmed.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order affirmed.