Ftjld, J.
Prior to the summer of 1961, the Education Law of this State provided that the Board of Education of the City of New York was to consist of nine members appointed by the Mayor (§ 2553, subd. 2). During the early part of August, the Mayor asked those then serving on the board to resign, and all except three tendered their resignations. On August 21, the Legislature, convened by the Governor, met in an Extraordinary Session for the purpose of dealing with conditions in the school system of New York City. Finding and declaring that “ The conditions existing in [such] school system * * * have shaken public confidence, cause * * * grave concern and call for prompt corrective action” (§ 1)—in short, finding that “this is a time of crisis for the New York city schools ” (§1) —the Legislature passed the statute, now before us, under which the city’s Board of Education was to be reorganized and reconstituted, the method of effecting appointments to the board materially altered (L. 1961, ch. 971).
Pursuant to the legislation, the terms of those then comprising the Board of Education were to come to an end on September 20, 1961 (§ 2) and appointments of new members of the board, as well as of their successors, were to be made by the Mayor from a list of nominees to be submitted to him by “ a selection board” consisting of the heads of three universities located in New York City and the presidents of eight other organizations representing educational, civic, business, labor and professional groups interested in city affairs including education (§§ 3, 5).[1] In making its nominations, the selection board was directed to receive and consider “ recommendations from representative associations [and] * * # groups active or *323 interested in the field of education ” and to select nominees who in its judgment are £ £ persons of outstanding experience, competence and qualification for service on the board of education ” (§ 3). For the purposes of the initial appointment of nine new board members, the selection panel was required to submit a list of at least 18 names by September 15, 1961 (§3). If the Mayor should fail to make the appointments by September 20, the State Commissioner of Education was to make them from among the nominees submitted to the Mayor (§3). If the selection board submitted less than 18 names to him, the Mayor was ££ to fill from the names submitted that number of vacancies equal to one-half the number of names submitted disregarding resulting fractions and the mayor [was authorized to] fill any remaining vacancies * * * without regard to the provisions of this section ” (§ 3).[2]
Following enactment of the statute, the selection panel met, nominated 26 persons, eight more than the specified mirtirrmm; and submitted a list of such nominees to the Mayor. Several days later, the Mayor made his appointments to the board from that list. The plaintiffs, former members of the board who had not resigned and whose terms of office still had some time to run, brought this action for a judgment (1) declaring the new statute unconstitutional and (2) enjoining the Mayor from making appointments to the board—to cull from their complaint— “in [their] place and stead”.[3] The court at Special Term dismissed the complaint, the Appellate Division affirmed unanimously and the appeal is here as of right on constitutional grounds.
The plaintiffs’ basic contention is that, insofar as chapter 971 of the Laws of 1961 terminates their terms of office and provides for a new method of appointing board members, it violates the home rule provisions of the State Constitution (art. IX, § 9) and, insofar as it vests the power of nomination in private persons and organizations, it not only interferes with *324 home rule but also constitutes some sort of impermissible delegation of legislative authority. They further urge that the statute is a bill of attainder, in violation of section 10 of article I of the United States Constitution.
We may quickly dispose of the attack upon the statute on the score of its having shortened the plaintiffs ’ terms of office. The office held by each of the plaintiffs was concededly created by the Legislature, not by the Constitution, and there is no constitutional inhibition against the mere shortening of the term of an existing statutory office by legislation aimed at the office rather than at its incumbent. (See Conner v. Mayor of City of N. Y., 5 N. Y. 285, 295-296; Long v. Mayor of City of N. Y., 81 N. Y. 425; Dodge v. Board of Educ., 302 U. S. 74, 78-79; Phelps v. Board of Educ., 300 U. S. 319, 323.) Public offices are created for the benefit of the public, and not granted for the benefit of the incumbent, and the office holder has no contractual, vested or property right in the office. (Long v. Mayor of City of N. Y., 81 N. Y. 425, 427-428, supra.) Absent any express constitutional limitation, the Legislature has full and unquestionable power to abolish an office of its creation or to modify its term, or other incidents attending it, in the public interest, even though the effect may be to curtail an incumbent’s unexpired term. (See Conner v. Mayor of City of N. Y., 5 N. Y. 285, 295-296, supra; Long v. Mayor of City of N. Y., 81 N. Y. 425, 427-428, supra; Dodge v. Board of Educ., 302 U. S. 74, 78-79, supra.)
We may be equally brief in dealing with the plaintiffs’ attack on the statute as a bill of attainder. Such a bill has been defined as a legislative act which applies either to named or easily identifiable individuals in such a way as to inflict punishment or impose penalties upon them without a judicial trial. (See Cummings v. State of Missouri, 4 Wall. [71 U. S.] 277, 323; United States v. Lovett, 328 U. S. 303, 315; Garner v. Los Angeles Bd., 341 U. S. 716, 722; Communist Party v. Control Bd., 367 U. S. 1, 82 et seq.) Stated even more succinctly, “Punishment is a prerequisite ”. (Garner v. Los Angeles Bd., 341 U. S. 716, 722, supra.) There is not the slightest warrant in the present case for the charge that either the purpose or the effect of the statute was to punish or impeach the plaintiffs or any other incumbent member of the former board or to render them ineligible for consideration as potential appointees to the new board. It is *325 clear that general legislation snch as this, designed solely to provide a more effective and efficient body and aimed at the office of board members rather than at the incumbent office holders, has none of the objectionable attributes of a bill of attainder. (See Garner v. Los Angeles Bd., 341 U. S. 716, 722, supra.)
This brings us to the challenge directed at the new appointive procedure prescribed by the statute. As we have already stated, the plaintiffs’ principal reliance is on the home rule provisions of our State Constitution, contained in section 9 of article IX. As far as pertinent, section 9 reads as follows:
‘ ‘ All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution and all officers whose offices may hereafter be created by law shall be elected by the people, or appointed, as the legislature may direct.”
The purpose of these provisions is to preserve the principle of home rule for cities, towns and villages “ by continuing the right of these divisions to select their local officers, with the general functions which have always belonged to the office.” (People ex rel. Metropolitan St. Ry. Co. v. State Bd. of Tax Comrs., 174 N. Y. 417, 434; see, also, People ex rel. Wood v. Draper, 15 N. Y. 532, 539.) With the exception of essentially new offices, created after the adoption of the constitutional provisions, the Legislature is thus prohibited from providing for the selection of such local officers other than through local elections or through appointment by local authorities. (See Matter of Brown-Lipe Gear Co. v. Ferris, 275 N. Y. 418; People ex rel. Town of Pelham v. Village of Pelham, 215 N Y. 374; People v. Raymond, 37 N. Y. 428; see, also, Matter of McAneny v. Board of Estimate, 232 N. Y. 377, 390-391; Matter of Morgan v. Furey, 186 N. Y. 202, 206-207.) Those restrictions do not, however, apply to nonlocal or newly created offices. (See People ex rel. Wood v. Draper, 15 N. Y. 532, 539, supra; Sturgis v. Spofford, *326 45 N. Y. 446, 450; Matter of Morgan v. Furey, 186 N. Y. 202, 206-207, supra.)
It is perfectly clear, as all the members of the court agree, that the plaintiffs’ reliance on section 9 is misplaced, since members of New York City’s Board of Education are not “ city officers ’ ’ within the meaning of that section. On the contrary, ' it has long been settled that the administration of public education is a State function to be kept separate and apart from all other local or municipal functions (N. Y. Const., art. XI, § 1; art. IX, § 13, subd. B). Although members of a Board of Education in a city perform tasks generally regarded as connected with local government, they are officers of an independent corporation separate and distinct from the city, created by the State for the purpose of carrying out a purely State function and are not city officers within the compass of the Constitution’s home rule provisions. (See Gunnison v. Board of Educ., 176 N. Y. 11, 23; Matter of Emerson v. Buck, 230 N. Y. 380, 385; People ex rel. Wells & Newton Co. v. Craig, 232 N. Y. 125, 135; Matter of Divisich v. Marshall, 281 N. Y. 170, 173; Nelson v. Board of Higher Educ. of City of N. Y., 263 App. Div. 144,149, affd. 288 N. Y. 649; People ex rel. Elkind v. Rosenblum, 184 MisC. 916, affd. 269 App. Div. 859, affd. 295 N. Y. 929; Matter of Board of Educ. of Bethlehem Union Free School Dist. v. Wilson, 303 N. Y. 107, 113.) “ If there be one public policy well-established in this State ”, this court declared in Matter of Divisich v. Marshall (281 N. Y. 170, 173, supra), “ it is that public education shall be beyond control by municipalities and politics. The Board of Education of the City of New York is not a department of the city government, it is an independent corporate body ”.
The circumstance that the city exercises fiscal control over the Board of Education or that the Legislature has seen fit to vest the power of appointment and of removal of its members in the Mayor or that school personnel in certain instances have been made subject to the same controls and limitations as city employees cannot affect the status of the board as an agency of State Government. The statutory requirements that the Board of Education submit expense budget estimates to the Board of Estimate (Education Law, § 2576) and an annual report to the Mayor (New York City Charter, § 522) are merely *327 corollaries of the obligation imposed on New York City, as it is on other municipalities, to contribute to the support of education furnished within its territorial limits. (See Matter of Divisich v. Marshall, 281 N. Y. 170, 174, supra.) And, in exercising his appointive and removal powers, the Mayor is acting by legislative direction as a State officer in support of the State system of education. (Cf. Maxmilian v. Mayor of City of N. Y., 62 N. Y. 160, 165-166.) It is because of his intimate knowledge of affairs in the city, because it regards the Mayor as qualified to act in these areas, that the Legislature has invested him with such powers. The Commissioner of Education, it should be observed, has similar powers of removal (Education Law, § 306). Nor does the fact that school personnel have been made subject to some of the prohibitions imposed on city employees (see Matter of Daniman v. Board of Educ. of City of N. Y., 306 N. Y. 532, 539) signify that school personnel have thereby been made municipal officers within the meaning of the Constitution. All it means is that the Legislature has determined that school personnel who are operating within the territorial limits of the city shall in certain respects be subject to the same restrictions as are placed upon city employees. As Justice Bebítiíeb aptly observed at Special Term, it is in large measure because of the “ very formidable powers [vested in the city], particularly that of control of the purse strings, [that] the boards as agencies of the State government must remain independent of local governments.”
Since, then, education is a State, not a local, function and members of New York City’s Board of Education are State, not local, officers, the home rule restrictions of section 9 are inapplicable and, under the explicit language of that section, such officers may be “ elected by the people or appointed, as the legislature may direct.” (Emphasis supplied.)
Despite this apparently unrestricted grant of power to the Legislature to direct the mode of selection of nonlocal officers, whose election or appointment is not provided for by the Constitution, it is insisted that the method of appointment provided for by chapter 971 must be condemned as an unlawful delegation of legislative authority in violation of section 1 of article III of the State Constitution. As we understand the argument, it is that the Legislature may not confer on private individuals or *328 organizations a voice of any kind in the appointment of public officers, and that such a delegation constitutes an unconstitutional relinquishment of legislative authority.
We shall shortly consider the ample authority, both in this State and elsewhere, supporting the validity of legislation providing for an appointive procedure such as that prescribed by the present statute. But, before doing so, it is worth noting that this very technique — of designating a representative panel of responsible and knowledgeable persons to assist the appointing power by submitting a list of eminently qualified nominees from among whom the appointments are to be made — is by no means a novel one in New York. Since before the turn of the century, a similar procedure has been followed in the appointment of State boards of examiners and committees on grievances. The Education Law contains a number of sections providing for the appointment of members of such bodies by the State Board of Regents from among nominees designated by private professional societies. (See, e.g; Education Law, § 6607, derived from Public Health Law of 1893, § 161, as added by L. 1896, ch. 297, § 2 [State Board of Dental Examiners]; Education Law, § 6703, derived from Public Health Law of 1893, § 172, as added by L. 1895, ch. 860, § 1 [State Board of Veterinary Medical Examiners]; Education Law, § 6802, derived from Public Health Law of 1893, § 180 [State Board of Pharmacy] ; Education Law, § 6903, derived from Public Health Law of 1893, § 207, as added by L. 1903, ch. 293, § 1 [State Board of Examiners of Nurses]; Education Law, § 7004 [State Board of Podiatry Examiners]; Education Law, § 6515 [Committee on Medical Grievances]; Education Law, § 6515-a [Committee on Physiotherapy Grievances]; Education Law, § 6904 [Advisory Council of Nurses].)
In our judgment, the Legislature’s power to provide such a method of appointment is not open to doubt. In so many words, section 9 of article IX of our Constitution declares that all officers other than local officials whose election or appointment is not provided for by the Constitution (and all officers whose offices “ may hereafter be created ” by law) “ shall be elected by the people or appointed, as the legislature may direct. ’ ’ This is plain, forthright language and, as this court long ago held when called upon to consider the constitutionality of legis *329 lation which went much further than that now under review, it means precisely what it says. (See Sturgis v. Spofford, 45 N. Y. 446, supra; see, also, Matter of Kane v. Gaynor, 144 App. Div. 196,197, affd. 202 N. Y. 615; State Bd. of Pharmacy v. Bellinger, 138 App. Div. 12,14-15; Szold v. Outlet Embroidery Supply Co., 274 N. Y. 271, 279.) The statute upheld in the Sturgis case, instead of providing for a selection or nominating board, actually vested the very power of appointment in specified private organizations. More particularly, it established a board of five commissioners of pilots for the Port of New York and provided for the “ election ” of “ three * * * by the members of the chamber of commerce, and the other two by the presidents and vice presidents of the marine insurance companies of the city of New York represented” in the city’s board of underwriters.
In a carefully considered opinion by Chief Judge Church, the court sustained the validity of the statute and the method of appointment prescribed. Judge Church rejected the contention that “ the power of appointment can only be conferred [by the Legislature] upon somebody or officer representing or responsible to the people. ’ ’ Discussing the home rule provisions of the Constitution of 1846 (art. X, § 2), which were practically identical with those contained in our present Constitution (art. IX, § 9), he pointed out that the limitations contained therein on the Legislature’s power vis-á-vis the election or appointment of local officers were “ carefully omitted ” in the very next clause dealing with the election or appointment of “ all other officers whose election or appointment is not provided for by [the] Constitution, and all officers whose offices may hereafter be created by law ”. With respect to the latter classes of officials (which the court decided included commissioners of pilots as offices “ hereafter created”), he wrote (45 N. Y., at p. 450):
“ The omission of any direction as to the appointment of such officers is significant of the intention of the framers and the people to leave the unrestricted power in the legislature. The inconsistency with the mode prescribed for appointing or electing the enumerated officers is one authorized by the express provision of the Constitution itself.”
*330 In other words, the Constitution itself grants to the Legislature the power to prescribe the method by which officers other than those provided for by the Constitution shall be selected or chosen.
The great weight of authority throughout the country supports this conclusion. (See, e.g., Matter of Opinion of the Justices, 252 Ala. 559; Matter of Bulger, 45 Cal. 553; Ex Parte Gerino, 143 Cal. 412; Overshiner v. State, 156 Ind. 187; Marks v. Frantz, 179 Kan. 638; Elrod v. Willis, 305 Ky. 225; McCurdy v. Jessop, 126 Md. 318; Bradley v. Board of Zoning Adjustment, 255 Mass. 160; Driscoll v. Sakin, 121 N. J. L. 225, affd. 122 N. J. L. 414; State ex rel. Humker v. Hummel, 143 Ohio St. 604; Floyd v. Thornton, 220 S. C. 414; but see, contra, Lasher v. The People, 183 Ill. 226; State ex inf. Hadley v. Washburn, 167 Mo. 680.) In some of these cases, the statute, similar to that in Sturgis, delegated the ultimate power of appointment to a private society or association,[4] while, in others, the enactment, resembling the one now before us, provided for a selection panel of private persons or organizations to submit a list of nominees to the appointing power for ultimate appointment.[5]
In Ex Parte Gerino (143 Cal. 412, supra), for instance, the statute provided that private medical societies were to appoint the members of the State’s Board of Medical Examiners. In answering the contention that the statute vested the power of appointment to public office in private organizations, the California Supreme Court called attention to a provision of its Constitution—almost identical with section 9 of article IX of ours (p. 414)—and then went on to hold (pp. 414-415):
“ This gives the legislature power to declare the manner in which officers other than those provided by the constitution shall be chosen. Such officers may be *331 appointed by the legislature itself, or the duty of appointment may be delegated and imposed upon some other person or body. (People v. Provines, 34 Cal. 541 ; In re Bulger, 45 Cal. 559.) There is no limitation to any particular person or class of persons upon whom alone the legislature may impose this obligation.”
In Bradley v. Board of Zoning Adjustment (255 Mass. 160, supra), the statute, in format similar to the one before us, created a zoning adjustment board (for Boston) composed of persons to be appointed by the mayor from candidates nominated by the chamber of commerce and other private organizations, including the Associated Industries of Massachusetts, the Boston Central Labor Union, the Boston Real Estate Exchange and the Boston Society of Architects. The Massachusetts high court upheld the act against the challenge that ‘ ‘ the freedom of appointment naturally appurtenant to the power [in the mayor] to name a public officer [was] curtailed beyond constitutional bounds” (pp. 164-165). After observing that “A statute designed to secure men of eminent sagacity for the performance of these duties is entitled to every presumption in its favor ’ ’ (p. 166), the court declared (pp. 166-167):
1 ‘ The executive officers and members of these several societies may be thought to know the persons possessing the finest expert knowledge and widest practical experience touching the various departments of activity indicated by their names. The nominations are not required to be made from the membership of the several societies. A wide field is open to the nominating societies to find those best adapted by character, learning, experience and common sense to perform the specified duties. The qualifications of persons appointed from nominees thus presented to the appointing officer doubtless were supposed by the Legislature to be likely to be superior to an exceptional degree. The scheme of the statute is to provide by statutory sanction expert advice of unusual quality for the aid of the appointing power. Its design is to secure the administrative and executive ability of men of experience and vision in municipal planning to meet the exigencies of the *332 present and the prospective needs of the future. Every presumption must be indulged * * * in favor of the view that the duty of making nominations imposed by the statute on the several societies will be performed with a genuinely zealous purpose to present to the consideration of the appointing officer the names of the best men obtainable for the service.”
There has been some diversity of opinion in other jurisdictions as to whether the Legislature may confer on private persons or organizations the actual power of appointing public officers, as distinguished from merely authorizing them to make nominations. While the decisions in most of the cases would—• as this court held in Sturgis (45 N. Y. 446, supra)—permit the Legislature to adopt either of these methods of appointment (see cases, supra, p. 330), the courts of a few states have expressed the view that, while the Legislature may grant a voice in the appointive process to private persons or organizations through the submission of lists of nominees, the ultimate power of appointment may not be granted to them. (See State ex rel. James v. Schorr, 45 Del. 18, 27-28, 32-33; Opinion of the Justices, 337 Mass. 777, 784.) No purpose, however, is to be served by treating these variant views at any length, for decision in the present case does not require us to decide whether the Legislature could have validly conferred on the selection panel the power of ultimate appointment to membership on the new Board of Education. Under the statute before us, it is the Mayor (or, in certain contingencies, the Commissioner of Education) who has been given the responsibility of making the actual appointments to the board. The selection panel merely serves the purpose of providing “ by statutory sanction expert advice of unusual quality for the aid of the appointing power ”. (Bradley v. Board of Zoning Adjustment, 255 Mass. 160, 167, supra.)
The cases relied upon to support the plaintiffs’ position are completely beside the point. We are not here confronted — as we were in Matter of Fink v. Cole (302 N. Y. 216) —with a statute purporting to delegate an essentially legislative power, the issuance of licenses, to a private club or association or — as we were in Fox v. Mohawk & Hudson Riv. Humane Soc. (165 *333 N. Y. 517, 523) —with an act violating the constitutional prohibition against the appropriation of public moneys ‘1 in aid of any association, corporation or private undertaking ” (N. Y. Const, of 1894, art. VIII, § 9, now art. VII, § 8).
Concededly, there is here no appropriation of public funds to any association or private undertaking and, it is just as clear, there is no delegation of legislative authority (N. Y. Const., art. Ill, § 1). It is sufficient to note that the exercise of the power of appointment to public office is not a function of such essentially legislative character as to fall afoul of the constitutional proscription. (See Sturgis v. Spofford, 45 N. Y. 446, 450, supra; Szold v. Outlet Embroidery Supply Co., 274 N. Y. 271, 279, supra; Reed v. Dunbar, 41 Ore. 509, 514; Floyd v. Thornton, 220 S. C. 414, 420-421, supra; see, also, 42 Am. Jur., Public Officers, § 95; Ann. 79 L. Ed. 474, 573.) In the Reed case, for instance, where a statute delegated to another the power to appoint a public official, the court wrote: “It is undoubtedly true that the legislature cannot delegate powers conferred upon it by the constitution, but the appointment to an office is not one of such powers. The appointment to public office may, under certain circumstances, be made by the legislature, but it is not a duty imposed upon it by the constitution. The rule invoked refers to the lawmaking power ” (41 Ore., at p. 514).
In point of fact, it is an exceedingly narrow and artificial view to emphasize, as the plaintiffs have, the “ private ” character of the selection board. It was set up, not to grant any special privileges to the organizations which they head (cf. N. Y. Const., art. III, § 17) but rather to establish a new public or quasi-public body invested with specific duties and responsibilities, in the field of education, for the interest and benefit of the public at large. (Cf. Matter of Opinion of the Justices, 252 Ala. 559, supra; Ex Parte Gerino, 143 Cal. 412, 415-416, supra; Bradley v. Board of Zoning Adjustment, 255 Mass. 160, supra.) In short, though, whether we regard the selection board as £ £ private ’ ’ or “ public ”, we perceive no constitutional bar to the legislative designation of a nominating panel, made up of people representing a knowledgeable cross section of city interests, either active or vitally interested in the educational life of the city, who could reasonably be expected to present to the Mayor, on an objective and nonpartisan basis, the names of individuals exceptionally qualified for service on the Board of Education.
*334 Accordingly, we conclude that the courts, below correctly sustained the validity of the entire statute before- us. It was error, however, to dismiss the complaint in this action for- a declaratory judgment merely because the plaintiffs, were not entitled to the declaration sought by them. (See, e.g., Cahill v. Regan, 5 N Y 2d 292, 298; Rockland Light & Power Co. v. City of New York, 289 N. Y. 45, 51; Civil Serv. Forum v. New York City Tr. Auth., 4 AD 2d 117,129, affd. 4 N Y 2d 866.)
The judgment appealed from should be modified, without costs, to the extent of directing judgment in favor of the defendants (1) declaring that chapter 971 of the Laws of 1961 is constitutional and (2) adjudging that it was proper for the defendant Mayor of the City of New York to appoint new members to the Board of Education in accordance with the provisions of the statute.

. The selection board consists of “the president of Columbia University; the chancellor of the City University of New York; the president of New York University; the president of the Association of the Bar of the City of New York; the president of the New York City Central Trades and Labor Council; the president of Commerce and Industry Association of New York, Inc.; the president of the Public Education Association; the president of the United Parents Associations of New York City, Inc.; the president of the League of Women Voters of the City of New York; the president of Citizens Union; and the president of the Citizens Budget Commission, Inc.”

. In addition, the statute contains provisions designed to strengthen the powers of the Board of Education and to assure closer supervision of the educational affairs of New York City’s school system by the Regents and the Commissioner of Education during an "emergency period”, which, was to continue until July 1, 1962 (§7).

. The Attorney-General was joined as a party defendant because of the attack on the constitutionality of a State statute (Executive Law, § 71).

. See Matter of Opinion of the Justices, 252 Ala. 559, supra; Matter of Bulger, 45 Cal. 553, supra; Ex Parte Gerino, 143 Cal. 412, supra; Overshiner v. State, 156 Ind. 187, supra; McCurdy v. Jessop, 126 Md. 318, supra; Driscoll v. Sakin, 121 N. J. L. 225, affd. 122 N. J. L. 414, supra; State ex rel. Humker v. Hummel, 143 Ohio St. 604, supra.

. See Marks v. Frantz, 179 Kan. 638, supra; Elrod v. Willis, 305 Ky. 225, supra; Bradley v. Board of Zoning Adjustment, 255 Mass. 160, supra; Floyd v. Thornton, 220 S. C. 414, supra; see, also, State ex rel. James v. Schorr, 45 Del. 18, 27-28, 32-33.