■ ANN MARIE HURLEY, Appellant-Respondent, v FIRST UNUM LIFE INSURANCE COMPANY, Respondent-Appellant. [808 NYS2d 247]—

In an action, inter alia, for a judgment declaring that the plaintiff is totally disabled and that the defendant is obligated to pay the plaintiff benefits pursuant to a policy of disability insurance, the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (O'Connell, J.), entered March 20, 2003, as, after a nonjury trial, and upon an order of the same court dated March 30, 2001, as amended June 14, 2001, and September 11, 2002, which, among other things, determined that the plaintiff breached her duty of cooperation under the disability insurance policy by refusing to submit to a medical test requested by the defendant, and granted that branch of the defendant's cross motion which was to dismiss the complaint, is in favor of the defendant and against her dismissing the complaint, and the defendant cross-appeals from so much of the same judgment as, upon the order, directed that the dismissal of the complaint be "without prejudice," and directed reimbursement of certain premiums paid by the plaintiff.

Ordered that the judgment is reversed insofar as appealed from, on the law, that branch of the cross motion which was to dismiss the complaint is denied, the order is vacated, and the

matter is remitted to the Supreme Court, Nassau County, for the entry of an amended judgment declaring that the plaintiff is disabled and the defendant is obligated to pay to the plaintiff disability benefits in accordance with the terms of the subject policy of insurance; and it is further,

Ordered that the cross appeal is dismissed as academic in light of the determination of the appeal; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

The plaintiff, a dental hygienist, purchased an "own occupation" policy of disability insurance from the defendant, First UNUM Life Insurance Company, in 1991. In or about September 1994 the plaintiff was diagnosed as suffering from carpal tunnel syndrome. She made a claim under the policy and the defendant required that she undergo a medical examination by a physician it selected. The examination included an electromyelograph study (hereinafter EMG), the result of which was negative. After considering the report of its examining physician, which reached the conclusion that the plaintiff was suffering from pronator teres syndrome, either in addition to or rather than carpal tunnel syndrome, the defendant determined that the plaintiff was totally disabled and commenced paying benefits pursuant to the policy. Each month thereafter, the plaintiff duly submitted a statement by her treating physician, Dr. Peter Stein, attesting to the continuation of the condition that resulted in the finding of a disability, as required by the policy, and the defendant paid the benefits due pursuant to the policy.

In early 1997 the defendant's claims examiner reviewed the plaintiff's file and found it questionable that the plaintiff was totally disabled as a result of her work as a dental hygienist, but was able to care for the child to which she had given birth subsequent to the onset of her disability. There was no medical evidence in the file, or produced subsequently, to support the reasonableness of this concern. The claims examiner ordered a medical review of the plaintiff's file and, as a result of that review, a physician employed by the defendant suggested to the plaintiff's physician that the plaintiff undergo an additional EMG. Although the plaintiff's physician initially agreed to that suggestion, and took steps to implement it, he subsequently discussed the matter with the plaintiff and they "decided that it probably wouldn't change anything, repeating EMGs." The plaintiff admitted that she initially agreed to submit to the EMG, but later changed her mind. A progress report by the plaintiff's physician dated May 12, 1997, indicated that "[d]ue to the complexity of her problems and bilateral nerve compressions and the limited guarantee of improvement by surgery, further invasive testing (EMG's) will be deferred at present."

In a telephone conversation on June 3, 1997, the claims examiner advised the plaintiff that in order for benefits to continue she would have to undergo the EMG. The substance of that conversation was confirmed by letter of the same date from the claims examiner to the plaintiff, which stated, in relevant part: "As discussed today, no further benefits can be extended until an EMG test is performed and the results are received and reviewed by this office. Based on all the information in the file and a telephone conversation between Dr. Stein and our medical consultant, we find that there is a lack of significant clinical and objective findings to support the degree of impairment you claim exists."

The plaintiff then obtained an attorney. By letter dated June 17, 1997, to the plaintiff's attorney, the claims examiner stated: "As discussed with Ms. Hurley and yourself, we feel we have a deniable claim at this time. However, we are willing to keep the file open pending the result of an EMG. After your review of the enclosed information, please advise as to whether Ms. Hurley will be having an EMG or not." This was followed by a letter dated July 9, 1997, to the plaintiff's attorney, in which the claims examiner stated: "As previously discussed with yourself and Ms. Hurley, we have not received any indication that Ms. Hurley will be having an EMG. Therefore, this claim has been closed." The letter then summarized the basis for the defendant's determination:

"As you are aware, we have completed a comprehensive review of all the medical records of Dr. Peter Stein. We then arranged for one of our staff physicians to review Ms. Hurley's medical records and to speak to Dr. Stein regarding Ms. Hurley's condition. Our staff physician and Dr. Stein . . . agreed to strongly suggest to Ms. Hurley that she undergo these studies. Even though we felt we had enough information in this file to close this claim for lack of significant clinical and objective findings to support the degree of impairment Ms. Hurley claims exists, we were willing to keep the file open until the EMG studies were done.

"Since there is insufficient medical information to support Ms. Hurley's claimed inability to work, we are unable to extend further benefits and have closed this claim."

The plaintiff thereafter continued to refuse to undergo the EMG and ultimately instituted this action, inter alia, for a judgment declaring that she is totally disabled and that the defendant is obligated to pay benefits pursuant to the policy of disability insurance. The defendant denied that the plaintiff is totally disabled and defended on the additional ground that the

plaintiff failed to submit to the examination, as required by the terms of the policy. Following a nonjury trial, the Supreme Court determined that the plaintiff's failure to submit to the testing constituted a breach of her duty to cooperate under the policy and, inter alia, dismissed the complaint without prejudice on that basis. The Supreme Court declined to address the issue of the plaintiff's disability on the ground that it was not necessary to reach that issue in light of its determination. This appeal and cross-appeal ensued.

Under the terms of the policy of disability insurance at issue here, the plaintiff was obligated to submit to a medical examination that was reasonably requested by the defendant at any time during the pendency of a claim. Since the policy treated each monthly payment as the subject of a separate claim, the plaintiff's claim was "pending" for each such period and the defendant was effectively permitted to require that the plaintiff undergo such an examination on a regular basis, provided that it was reasonable to do so. The willful failure of the insured to submit to a reasonably requested examination is a legitimate basis for denying the claim (*see Argento v Aetna Cas. & Sur. Co.*, 184 AD2d 487, 488 [1992]; *Pizzirusso v Allstate Ins. Co.*, 143 AD2d 340, 341 [1988]; *Ausch v St. Paul Fire & Mar. Ins. Co.*, 125 AD2d 43, 50 [1987]). In this context, however, the requirement that the request be reasonable can refer only to reasonableness in relation to the insurer's determination to honor or deny the claim. Viewed in that light, the defendant's request, under the particular facts of this case, was not reasonable.

Here, the plaintiff was diagnosed as suffering from carpal tunnel syndrome over two years before the claim was closed despite a negative EMG. The plaintiff's treating physician testified, and the physician who conducted the original medical evaluation on behalf of the defendant confirmed, that this was not unusual in light of the relatively high number of false negative results from the test. The plaintiff's treating physician further testified cogently that in light of this fact, a further EMG would not alter his diagnosis or his conclusion that the plaintiff suffered from a disabling condition. The medical evidence submitted by the defendant failed to counter this testimony. As a result, the plaintiff's refusal to undergo the EMG was not inconsistent with her obligations under the policy.

In any event, even if the defendant had reasonably requested an additional medical examination, the complaint was improperly dismissed on the ground that the plaintiff refused to submit to that examination since the defendant did not deny the claim

on that basis (*see General Acc. Ins. Group v Cirucci*, 46 NY2d 862, 864 [1979]; *Shell v Fireman's Fund Ins. Co.*, 17 AD3d 444, 446 [2005]; *Pawley Interior Contr., Inc. v Harleysville Ins. Cos.*, 11 AD3d 595, 596 [2004]). As the letters from the defendant's claims examiner made clear, while the defendant threatened to discontinue benefits by reason of the plaintiff's failure to undergo the EMG, the defendant ultimately denied the plaintiff's claim on the basis of the lack of sufficient evidence that the plaintiff was disabled within the meaning of the policy. Having elected to terminate the plaintiff's benefits because it found insufficient evidence that the plaintiff was disabled, the defendant had no basis to request a further examination and the plaintiff's subsequent failure to undergo the additional examination was immaterial to the validity of the termination (*see Finkelstein v Equitable Life Assur. Socy. of U.S.*, 256 App Div 593, 596-597 [1939], *affd* 281 NY 690 [1939]). The Supreme Court erred, therefore, in dismissing the complaint on the ground that the plaintiff failed to undergo the requested examination.

The validity of the defendant's action thus turns on the sufficiency of its finding that the plaintiff was not disabled within the meaning of the policy. Although the Supreme Court did not reach this issue, the scope of our review is sufficiently broad that we may reach the issue nonetheless and render the judgment we find to be warranted (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Ausch v St. Paul Fire & Mar. Ins. Co., supra* at 46). Upon doing so, we find that the complaint should have been sustained.

In the unique circumstances of this case, the plaintiff made out a prima facie case that the defendant breached the contract of insurance by establishing that the defendant admitted that she was disabled within the meaning of the "own occupation" disability policy by paying her claim for a period of 2½ years, and that there had been no change in her medical condition since that time. The defendant's proof, consisting, essentially, of testimony that without the EMG there was no "objective" proof of the plaintiff's disability, was insufficient to overcome the plaintiff's showing.

The parties' remaining contentions are either without merit or have been rendered academic in light of our determination.

Since this is an action for a declaratory judgment, we remit the matter to the Supreme Court, Nassau County, for the entry of a judgment declaring that the plaintiff is disabled within the meaning of the policy and that the defendant is obligated to pay to the plaintiff disability benefits in accordance with the terms

of the policy of insurance (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). H. Miller, J.P., Adams and Spolzino, JJ., concur.

Goldstein, J., dissents and votes to modify the judgment, on the law and the facts, by adding a provision thereto declaring that the disability insurance policy is cancelled and the parties have no further obligations to each other, and as so modified, to affirm the judgment insofar as appealed and cross-appealed from, with the following memorandum:

In 1991, the plaintiff purchased the subject disability insurance policy from the defendant, First UNUM Life Insurance Company. The policy provided that as part of the claim process, the insured was obligated to undergo "a medical examination or a personal interview as often as we reasonably request while the claim is pending."

In or about October 1994, the plaintiff claimed disability benefits pursuant to the policy, inter alia, for carpal tunnel syndrome. The defendant paid benefits to the plaintiff from January 1, 1995, until mid-1997 when the plaintiff refused to undergo an electromyelograph (hereinafter EMG) test. In a letter dated July 9, 1997, the defendant's claims examiner stated that "we have not received any indication that Ms. Hurley will be having an EMG. Therefore, this claim has been closed." In addition, the claims examiner's letter stated that there was "lack of significant clinical and objective findings to support the degree of impairment Ms. Hurley claims exists."

The plaintiff commenced the instant action, inter alia, for a judgment declaring that she was disabled and that the defendant was obligated to continue to pay her disability insurance benefits. In its answer, the defendant asserted as a defense that the plaintiff was barred from recovering benefits owing to her refusal to cooperate with the defendant's investigation of her alleged disability.

At a nonjury trial, evidence was adduced that the plaintiff submitted to an EMG test in December 1994, the results of which were within normal range. The results did not change her treating physician's diagnosis of carpal tunnel syndrome. When the defendant asked that the plaintiff submit to another EMG test in 1997, she refused, claiming that the test, which involves the placement of a needle through the skin, was "an invasive procedure," which was "uncomfortable" and not "conclusive." However, she acknowledged that she was not concerned about any risk to her safety from the test.

The Supreme Court concluded that the plaintiff's refusal to submit to the EMG test constituted a breach of her duty to cooperate under the policy. I agree.

The issue of the plaintiff's refusal to submit to an EMG test was raised in the letter of the defendant's claims examiner dated July 9, 1997, which stated that "we have not received any indication that Ms. Hurley will be having an EMG. Therefore, this claim has been closed" and further stated that there were insufficient "clinical and objective findings to support the degree of impairment Ms. Hurley claims exists." The claim was denied on two grounds: (1) failure to submit to the EMG, and (2) insufficient evidence of continued disability. The failure to cooperate was explicitly raised as a defense in the defendant's answer. Therefore, the failure to cooperate was a proper issue before the Supreme Court.

An insurance company is entitled to obtain information promptly to enable it to decide upon its obligations and protect against false claims (*see Davis v Allstate Ins. Co.*, 204 AD2d 592 [1994]; *Argento v Aetna Cas. & Sur. Co.*, 184 AD2d 487 [1992]). The plaintiff offered no reasonable excuse for her failure to submit to a second EMG test. She had previously submitted to the test in 1994 without complaint or adverse consequences. At worst, the EMG test, which involves insertion of a needle under the skin, is minimally invasive. Since the defendant asked for the second EMG test over two years after the plaintiff submitted to her first EMG test, her failure to comply violated the provision of the policy which required her to submit to a medical examination "as often as we reasonably request while the claim is pending." Since this is an action for a declaratory judgment, the Supreme Court should have declared that the insurance policy was cancelled and that the parties had no further rights or obligations under the policy (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]; *Coleman v New Amsterdam Cas. Co.*, 247 NY 271 [1928]; *United States Fid. & Guar. Co. v von Bargen*, 7 AD2d 872 [1959], *affd* 7 NY2d 932 [1960]).

If I were to reach the merits, I would find that the evidence in the record that the plaintiff is not disabled warrants remittitur to the Supreme Court for further findings of fact. Evidence was submitted that in carpal tunnel syndrome cases there should be a recovery. Therefore updated reports of the claimant's condition are necessary. Further, the defendant submitted evidence that the plaintiff's disability was not continuing. The defendant's expert, Dr. Lawrence Miller, testified that he examined the plaintiff on December 17, 1998, and found "there was nothing wrong with her." Dr. Miller noted that the plaintiff could flex and extend her wrist. He performed a "malingerer's test" which is positive if the patient is feigning a disability. Dr.

Miller pushed on two bones without pressing on any nerves, and the plaintiff claimed the pain went into her shoulder which was impossible since "[i]f you are pressing on no nerves at all you are not going to have pain shooting up to the shoulder."

Contrary to the conclusion of the majority, it cannot be said that the defendant's proof was confined to the argument that without the EMG test there was no objective proof of the plaintiff's disability. Clearly, the evidence in the trial record presents issues of fact which warrant further findings of fact by the trial court.