■ FRANK M. BRIGHT, Respondent, v MICA J. FREEMAN, Appellant. [808 NYS2d 359]—

In an action, inter alia, for a judgment declaring, in effect, that the child support provisions of the parties' "separation and child support agreement" properly departed from the presumptive support payable pursuant to the Child Support Standards Act (Domestic Relations Law § 240 [1-b]), the mother appeals from an order of the Supreme Court, Nassau County (Iannacci,

J.), entered November 12, 2004, which granted the father's motion for summary judgment declaring that "the agreement is enforceable."

Ordered that the order is reversed, on the law and as a matter of discretion, with costs, the motion is denied and, upon searching the record, summary judgment is awarded to the defendant, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that the agreement is unconscionable and unenforceable.

The parties, who were never married, are the parents of two children. When they separated, they entered into a "separation and child support agreement" dated December 1, 2002, pursuant to which the father agreed to pay child support in the sum of $450 per month, per child. Following a dispute over the validity of the child support provisions of the agreement, which was being litigated in Family Court, the father commenced this action for a preemptive Supreme Court judgment declaring that the agreement was valid and enforceable.

Pursuant to the Child Support Standards Act (hereinafter the CSSA) (Domestic Relations Law § 240 [1-b] [h]), a separation agreement which awards child support different from the presumptive amount mandated by statute must contain the following: (1) an acknowledgment that the parties have been advised of the substance of the CSSA; (2) a statement that the basic child support pursuant to the CSSA would presumptively result in the correct amount of child support; (3) what the CSSA basic child support would have been in the specific circumstances presented; and (4) the reasons why the agreed upon child support deviates from that set forth in the CSSA (*Gallet v Wasserman,* 280 AD2d 296 [2001]; *Lepore v Lepore,* 276 AD2d 677 [2000]).

Contrary to the mother's contentions, the agreement does not violate Domestic Relations Law § 240 (1-b) (h). It recites, inter alia, the parties' combined net income, their respective net incomes after the CSSA deductions are made, as well as the percentage of income (25%) that is mandated to be applied to the first $80,000 in combined income and, in the court's discretion, to the combined income above that amount. The agreement also recites the father's putative support obligation. While the calculations themselves are not set out, the parties have specified the information and amounts as required by the CSSA. There is no requirement that the actual calculations used to reach the results also be set out in the agreement. Finally, the agreement sets forth the parties' reasons for departing from the statutory formula. The Supreme Court thus properly held that the agreement complied with the CSSA requirements.

However, in opposition to the father's motion for summary judgment, the mother established, as a matter of law, that the parties' agreement was unconscionable. It is well settled that a separation agreement is closely scrutinized and may be set aside upon a showing that it is unconscionable or the result of fraud or overreaching in its execution (*Cruciata v Cruciata,* 10 AD3d 349 [2004]; *Santini v Robinson,* 306 AD2d 266 [2003]). Separation agreements may be set aside if their terms evidence a bargain so inequitable that no reasonable and competent person would have consented to it (*see Curtis v Curtis,* 20 AD3d 653 [2005]; *Broer v Hellermann,* 2 AD3d 1247, 1248 [2003]; *Croote-Fluno v Fluno,* 289 AD2d 669, 670 [2001]).

Here, the agreement minimizes the father's financial liability and places a disproportionately greater burden on the mother, inter alia, by requiring the father to pay the sum of only $900 per month instead of more than $2,000 per month that would be due under the CSSA. Moreover, the agreement compels the mother to spend a portion of the father's support payment for designated expenses such as the children's camp and college expenses, as well as to contribute the sum of $100 per month, per child to their college fund accounts. In addition, the mother is required to pay all unreimbursed medical benefits and dental expenses, as well as the cost of camp, Hebrew school, and similar expenses so long as she is employed and her health insurance continues. The agreement was to be effective only so long as the father earned $100,000 annually (net of the CSSA deductions), and provides for a reduction in his support obligation should his income diminish. However, it makes no provision for an increase in his obligations should his income appreciate nor for any adjustment to his obligation in the event mother's income drops or ceases entirely. Finally, the agreement compels the mother to reimburse the father for his visitation expenses up to $1,200 per child, per year. In short, we conclude that the agreement is so one-sided and inequitable as to be unconscionable (*see Wisniewski v Cairo,* 305 AD2d 788 [2003]; *Gibson v Gibson,* 284 AD2d 908 [2001]; *Tchorzewski v Tchorzewski,* 278 AD2d 869 [2000]). It is of such a quality that "no reasonable and competent person would have consented to it" (*Curtis v Curtis, supra* at 654).

Since this is a declaratory judgment action, the matter must be remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that the agreement is unconscionable and unenforceable (*see Lanza v Wagner,* 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). S. Miller, J.P., Ritter, Rivera and Skelos, JJ., concur.