OPINION OF THE COURT
Leonard B. Austin, J.
*729 Defendant, Arch Specialty Insurance Company, sued herein as Arch Insurance Group Inc., also known as Arch Specialty Insurance Agency Inc. moves pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint which seeks a judgment declaring that certain medical malpractice policies are void. Plaintiff cross-moves to amend the caption to reflect the correct name of the defendant.
Background
Plaintiffs, the Sagemark Companies, Ltd., and its subsidiaries Premier P.E.T. of Long Island, LLC and PET Management of Queens, LLC (collectively Sagemark), allege that they are not physicians, and that the LLCs are prohibited from practicing medicine under New York law. Thus, they allege that they do not require medical malpractice insurance and that defendant, Arch Specialty Insurance Agency Inc., issued medical malpractice insurance to them knowing that they did not practice medicine. Plaintiffs demand a return of premiums paid for policies and renewals thereof over a multiyear period.
Addressing the specific allegations of the complaint, paragraph five alleges that “this is an action for a declaratory judgment . . . that certain medical malpractice insurance policies . . . are null and void and that, accordingly, all premiums paid in connection with such void policies should be returned to Plaintiffs.” Plaintiffs seek a return of $337,851.96 in premiums paid over a period of several years for the subject policies and renewals thereof.
The basis for the claim that the policies are void is that “the New York LLCs do not engage in the practice of medicine” and that pursuant to New York law “limited liability companies are prohibited from engaging in the practice of medicine” (complaint KK 7, 8). The complaint alleges that although Sagemark submitted applications which state that the Long Island and Queens LLCs provide “management and administrative” services, Arch purported to issue “a medical malpractice insurance policy.”
Complaint paragraphs 20 and 21 state that the plaintiffs are “in the business of managing radiology medical practices” and do not perform any “radiology or other medical services themselves.” The complaint alleges that “since the New York LLCs do not provide any medical services and are prohibited by New York Law from doing so” there was no basis for Arch to is *730 sue the policies (emphasis supplied). Plaintiffs repeatedly refer to the alleged medical malpractice policies as “the Void Policies” (complaint 1Í 23).
Plaintiffs allege that
“in addition, because there was no insurable risk since the New York LLCs were not engaged in the practice of medicine and because New York Law expressly prohibits New York LLCs from practicing medicine, any such medical malpractice insurance policies purportedly issued to them by Arch . . . are null and void and without force and effect” (complaint 1i 24).
Plaintiffs allege that Arch was aware that “the New York LLCs did not provide medical services, yet still issued the policies to the New York LLCs and collected premiums” (complaint 11 30). Plaintiffs also use the term “health care professional” services interchangeably with “medical” services, repeating that they are “prohibited from providing such services under New York law” (complaint If 32).
The complaint concludes:
“As the New York LLCs do not, and legally cannot, perform any health care professional services, there is no insurable risk under the Void Policies, and the Void Policies are void, and the premiums paid for these policies by Sagemark and/or the New York LLCs must be returned to them” (complaint 1Í 34).
Arch avers that the policies issued to plaintiffs did not provide coverage for medical malpractice, but rather for “healthcare professional services.” It claims that the Long Island and Queens LLCs are not legally prohibited from, and do provide, health care services covered by the subject policies, that risk attached, and that plaintiffs are not entitled to a return of premiums. In support, they provide a copy of Sagemark Companies, Ltd. form 10-KSB filed with the Securities and Exchange Commission for the fiscal year that ended December 31, 2007. Arch also submits copies of the subject insurance policies.
Sagemark’s annual report under the Securities Exchange Act of 1934, form 10-KSB, for the fiscal year ending December 31, 2007, reports that Sagemark had operated PET/CT, short for Positron Emission Tomography and Computer Tomography, imaging centers at multiple locations throughout the *731 United States, including Kansas, New York, New Jersey and Florida. Page six of the report (moving papers exhibit B at 12 of 103) notes that some of the states in which Sagemark operated “prohibit the practice of medicine by non-physicians . . . prohibit the employment of physicians by nonprofessional entities, and prohibit the rebate or division of fees between physicians and non-physicians.”
In contrast, the report also indicates that Sagemark provided “imaging procedures” for Medicare patients (id. at 33 of 103). The range of services provided is clear from the recitation of Sagemark’s sources of revenue, viz., “net patient service revenue from the PET imaging centers which we own, management fees from the PET imaging centers which we manage pursuant to services agreements, and lease revenue from PET imaging centers where we lease time on the PET/CT equipment to physician groups.” (Id. at 30 of 103.)
The report indicates that imaging services provided at Sage-mark’s PET imaging centers “involve the controlled storage, use and disposal of material containing radioactive isotopes” which “presents a risk of accidental environmental contamination and physical injury” (id. at 16 of 103). The report indicates that all but one of the imaging centers has been sold.
Turning to the subject Arch policies, section 1 (a) provides coverage for “amounts that the insured becomes legally required to pay as damages because of ‘medical professional injury’ that results from acts or omissions in the providing of or failure to provide ‘health care professional services’ by or for an insured” (emphasis supplied).
Section VIII (definitions) at paragraph 13 defines “medical professional injury” as “injury, including death, to others that results from acts or omissions in the providing of or failure to provide ‘health care professional services’ by or for an insured.”
Paragraph 10.a defines “health care professional services,” in part, as, “Medical, surgical, dental, x-ray, nursing, mental or other similar health care professional services or treatments.” Paragraph lO.b includes “[providing or dispensing food, beverages, medications or medical supplies or appliances in connection with services described in Paragraph 11. a [sic] above.”
Having defined what is covered, the policy describes who an “insured” is. With regard to a limited liability company cover *732 age it provides: “with respect to the provision of ‘health care professional services’ by you or for you. Your members are also insureds . . . with respect to the conduct of your business. Your managers are insureds . . . with respect to their duties as your managers.” However, “no intern, extern, resident, or dental, osteopathic or medical doctor is an insured for any ‘medical professional injury’ that results from acts or omissions in the providing of or failure to provide ‘health care professional services’.”
Discussion
The foregoing language precludes any claim that the policy, which covers health care professional services, includes as an insured any medical or osteopathic doctor. Thus, the documentary evidence defeats, as a matter of law, any claim that the subject policies are medical malpractice policies.
Where the documentary evidence “utterly refutes Plaintiff’s factual allegations, conclusively establishing a defense as a matter of law” dismissal is warranted. (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002].) Plaintiffs fail to state a claim that no risk ever attached on the basis that an LLC is prohibited from practicing medicine, as doctors are precluded from coverage under the subject policies. As the complaint seeks a declaratory judgment, dismissal is not an appropriate remedy and judgment must be declared on behalf of defendant. (See Lanza v Wagner, 11 NY2d 317, 334 [1962], appeal dismissed 371 US 74 [1962], cert denied 371 US 901 [1962].)
Plaintiffs have not sought leave to amend the complaint to allege that they are prohibited under New York law from providing “medical professional services” as defined. This is not an example of a matter in which the affidavits submitted by a plaintiff remedy defects in the complaint. (See Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976] [“affidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims”]; see also Nonnon v City of New York, 9 NY3d 825 [2007].)
The essence of the complaint is that plaintiffs are legally prohibited from performing the very acts for which they claim they are insured. The affidavits do not provide any alternative prohibitions limiting their services as a matter of law. For example, licensed technicians routinely administer X rays, and a technician need not be a radiologist/physician (see e.g. Public *733 Health Law art 35). Plaintiff has not alleged that an LLC is precluded from employing technicians or administering X rays on behalf of a radiologist. Plaintiffs’ affidavits have not shown that, although they have failed to state a cause of action, they nevertheless are possessed of one.
The only colorable claim supported by the present record is that plaintiffs’ private management services contracts with third parties do not provide for the services which are covered under the subject policies. However, plaintiffs, in attempting to save the complaint, have not provided affidavits or provided any authority that such private contracts with third parties would constitute sufficient grounds to void the subject policies after they have expired. Nor have they alleged that Arch was aware of the terms of the management contracts.
Indeed, the insurance application has the box marked “X-ray Imaging Center Management” checked under the legend “Health Care Services Provided” (Maloney affidavit, exhibit C at 2). It also indicates that plaintiffs engage in hiring health care professionals and engage in the screening procedures outlined in the application (id. at 6).
It would be inappropriate under the circumstances presented to require a refund of premiums of expired policies which are not void. See O’Connor Transp. Co., Inc. v Glens Falls Ins. Co. (204 App Div 56, 58 [4th Dept 1922]), where the Court stated:
“I gravely doubt that we should adopt the doctrine in Waller v. Northern Assurance Co. [64 Iowa 101, 19 NW 865 (1884)]. The principle in that case has not been followed in any jurisdiction so far as I can discover. Where the policy has expired and there has been no loss and no question of the validity of the policy has arisen, it seems to me that it would be against public policy and good morals to permit a recovery of the premium on the ground that the policy had at all times been invalid because the insured had made or taken advantage of a warranty therein which was not true.” (Emphasis supplied.)
Thus, the action must be dismissed.
Since the caption misstates the identity of defendant the caption should be amended notwithstanding the dismissal of this action.
Accordingly, it is ordered that defendant’s motion to dismiss this action is granted; and it is further ordered that plaintiffs’ *734 cross motion to amend the caption herein is granted. The caption is hereby amended as follows:
SUPREME COURT - STATE OF NEW YORK
COUNTY OF NASSAU
THE SAGEMARK COMPANIES, LTD., PREMIER PE.T. OF LONG ISLAND, LLC AND PET MANAGEMENT OF QUEENS, LLC
v
ARCH SPECIALTY INSURANCE GROUP