OPINION OF THE COURT
Harold Hyman, J.
By this special proceeding, petitioner seeks to declare the provisions of section 2590-i of the Education Law unconstitutional and to restrain respondent Macchiarola from suspending or removing petitioner Community School Board.
The instant proceeding arises out of a dispute between petitioner school board and respondents city educational authorities relating to the collection and supplying of ethnic data about the pupil and staff population for petitioner’s district. This dispute has persisted for a number of years. Petitioner, along with other community boards, has commenced an action for declaratory judgment in the Federal District Court, Eastern District of New York, to declare that the gathering of such data is unconstitutional. Apparently, it is the intention of the respondents to use such data in connection with certain policies arranged between the City Board of Education and the Federal Office of Civil Rights. Petitioner community board refused to deliver such data during the 1977-1978 school year. In March of 1978, the Chancellor, acting under his authority pursuant to section 2590-1 of the *221 Education Law, removed the board and collected the data through his designated trustee. Appeals were taken from that decision, but before any determination, the board was restored to its position. The petitioner community board has again refused to provide that data from the 1978-1979 school year. It has apparently been directed to do so by the Chancellor and a conciliation meeting has been scheduled in that regard. Petitioner further alleges that it believes that it is the Chancellor’s intention to suspend the board if it should persist in its refusal.
In reply to this application, respondent Chancellor and City Board of Education move to dismiss, claiming that petitioners lack standing to bring this application, fail to state a cause of action, and have no basis for proceeding under CPLR 7803.
In view of the undisputed fact that the Chancellor has taken steps preparatory to removal of the board and the further fact that similar action was taken earlier with regard to the same dispute, it cannot be said that the board, if not the individual petitioners, lacks standing to question the validity of the statutes under which respondents purport to act (see Board of Educ. v Allen, 20 NY2d 109, 115, n 1, 118-119, affd 392 US 236). Respondent’s contention that petitioner has no basis for this proceeding under CPLR 7803 does not warrant dismissal. Where a jurisdicable issue is pleaded and all the necessary parties are before the court, questions as to the form of action or proceeding under which the issue is before the court cannot provide a basis for dismissal of the issue (CPLR 103, subd [c]; Matter of Kovarsky v Housing & Dev. Admin, of City of N. Y., 31 NY2d 184, 191-192). Thus, whether the issue is cognizable under an article 78 proceeding or under an action for declaratory judgment, this court must reach the merits of petitioner’s application.
At the heart of the dispute presently before the court are the provisions of section 2590-1 of the Education Law, which provide in pertinent part that: "If, in the judgment of the chancellor any community board fails to comply with any applicable provisions of law, by-laws, rules or regulations, directives and agreements * * * he may issue an order requiring the community board to cease its improper conduct * * * [and] may enforce that order by the use of appropriate means including: (a) supersession of the community board * * * and (b) suspension or removal of the community board”. (Emphasis added.) It is petitioner’s first contention that such legislation *222 permitting an appointed official to remove an elected board is an improper constitutional authorization akin to a bill of attainder. Bills of attainder and the parallel bill of pains and penalties barred by the Federal Constitution (US Const, art I, § 10) are legislative acts which apply to either named or easily identifiable individuals which inflict punishment upon such individuals without judicial trial (United States v Brown, 381 US 437; Cummings v Missouri, 71 US 277). While the legislation here at issue is aimed at readily identifiable recalcitrant boards, it cannot be said to impose punishment of a kind found in the unconstitutional bills of attainder (Lanza v Wagner, 11 NY2d 317, 324-325).
Petitioner also alleges that the provisions of section 2590-/ are unconstitutional in that they fail to provide procedural due process in the manner of removal. Particularly, they contend that no notice is required, no formal hearing, no unbiased tribunal, no required fact finding, no legislative criteria or standards are delineated and no limitation on the length or duration of the period of removal is specified. In this regard, the court doubts that the general constitutional standards of procedural due process must apply to disputes between governmental agencies (Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ., 23 NY2d 483, 487-488; see Komyathy v Board of Educ., 75 Misc 2d 859, 863-864).
Unquestionably, control of educational policies in this State rests with the Legislature and the State commissioner (NY Const, art XI, § 1; Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ., supra, p 485). The issue thus is substantially one of administrative law and the proper delegation of authority by the Legislature to a governmental agency. Substantially the same issues as raised here were raised in Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ. (supra, p 483), wherein the court held that the Chancellor and the New York City Board of Education could properly remove the local board. Unquestionably, the underlying legislation in that case differs from that presently before this court. The Ocean Hill-Brownsville case arose during a period of experimentation with community control of education, when local boards were not mandated and their election not required. Of particular interest, the court there noted that summary removal of a board was permissible in the absence of legislation giving local boards autonomy, a fixed term of office or tenure terminable only for cause (Ocean Hill-Browns *223 ville Governing Bd. v Board of Educ., supra, p 488). The court did consider new legislation, not then effective, which gave the local board a greater status but by its terms made it subject to the over-all control of the city board. That legislation in large measure provides the same control over local boards as is provided in the current legislation (cf. L 1968, ch 568, § 1, subd 4, par a, cl [5], with Education Law, § 2590-1). Thus, it is clear that while the boards have been granted a kind of tenure, they remain subject to the traditional hierarchy of authority which has been long standing in the educational field of this State (see Ocean Hill-Brownsville Governing Bd. v Board of Educ., supra, p 488; James v Board of Educ., 42 NY2d 357, 364-365). Petitioner’s contention notwithstanding, the court finds that the Chancellor does not act without legislative guidelines and by mere personal fiat. He may supersede or suspend the community board only when that board refuses to comply with the provisions of law, by-laws, rules and regulations or directives and agreements. The Chancellor’s conduct cannot be without any prior notice to the community board since he is required to make efforts at conciliation with the board. Finally, while the responsibility the Chancellor is authorized to take is broad, he must still act within the legislative restrictions, taking only such reasonable steps as may be necessary to effectuate compliance with the law (see Community School Bd. No. 6, Manhattan v Scribner, 78 Misc 2d 195; cf. Matter of Pell v Board of Educ., 34 NY2d 222).
Petitioner’s contention that other school boards can only be removed by formal hearings (see, e.g., Education Law, § 2559) does not warrant a different result here. In that instance the board is the primary educational authority in the district. Here, there is one city-wide educational district, a fact unchanged by the enactment of community school board legislation (Education Law, § 2590). The community boards are given considerable latitude in the administration of education in their area but are still subject to the rules and regulations of the central administrative authority (James v Board of Educ., supra). Thus, educational policy is determined by the central authority and variations in implementation suitable for each district are determined by the community board. It is not for this court to interfere with the legislative delegation of authority nor with the manner provided to the central authority for enforcement of its decisions. The only constitutional *224 limitation on removal of public officers does not by its terms apply to this case (NY Const, art XIII, § 5).
Parenthetically, the petitioner board sought to temporarily restrain the collection of data pending its Federal lawsuit. This relief was denied (Caulfield v Board of Educ., 449 F Supp 1203, mod 583 F2d 605, 610-612). Thus, it appears that every legitimate avenue to forestall the mandated collection of data has been explored. Absent a constitutional bar not present here, the respondent is legislatively authorized to take such reasonable steps as are necessary to effect compliance with its previously determined policy.
Petitioner also contends that the proposed action of respondent Chancellor would violate section 2590-1 of the Education Law if the board were suspended since such would be an act beyond that necessary to effectuate the requirements for reporting ethnic data. In this regard, petitioner’s application is premature. It is not within the province of this court to anticipate what response, if any, permissible to the Chancellor under the provisions of section 2590-1 will be utilized in this case. Further, even if such acts were taken, appropriate administrative remedies, including appeals to the city board (Education Law, § 2590-1, subd 2) and to the State commissioner are available to the board.
Accordingly, the motion of the respondents to dismiss is granted.