*996 OPINION OF THE COURT
Lorraine Backal, J.
The petitioners have moved by order to show cause dated February 14, 1994 to vacate the order of Ramon C. Cortines, Chancellor of the Board of Education of the City of New York, dated February 9, 1994, which ordered Community School Board Nine to renew the contract of Felton Johnson, the community superintendent, for one year beyond the term of the current Community Board. Petitioners further request that the respondents be restrained from implementing said order.
FACTS
During the tenure of School Chancellor Joseph Fernandez, one of the petitioners, Carmelo Saez, on behalf of Community School Board Nine, entered into an employment contract with Felton Johnson whereby Mr. Johnson was employed as community superintendent for a three-year term commencing October 30, 1991 and ending June 30, 1994, at the maximum salary set by the Central Board of Education.
Pursuant to the terms of the contract, Community School Board Nine, six months before the expiration of Mr. Johnson’s employment contract, by letter sent on or about December 20,
1993, advised Mr. Johnson that his employment contract would not be renewed upon its expiration. The Board did not give Mr. Johnson any reasons for its decision not to renew the contract.
Thereafter, on December 22, 1993, at a public hearing, the Board ratified its decision not to renew Mr. Johnson’s employment contract.
By letter dated December 22, 1993, Chancellor Cortines requested the Board to carefully consider continuing Mr. Johnson as district superintendent for at least one additional year until June 1995, and invited the Board to meet with him to discuss the feasibility of continuing Mr. Johnson’s contract. Subsequent to December 22, 1993 and prior to February 9, 1994, the Chancellor met with Community School Board Nine to discuss the matter further.
Following the meeting, the Chancellor, by letter dated February 9, 1994, directed Community School Board Nine to continue to employ Mr. Johnson as district superintendent for the maximum term permitted by law (one year beyond the term of the current Board).
*997 LEGAL PROCEEDINGS
The underlying proceeding was initiated by a petition which, inter alia, requests that the directive of respondent Chancellor be declared null and void and be vacated; and that a temporary restraining order be issued restraining respondents from implementing the Chancellor’s directive pending the hearing of the motion.
At the argument, petitioners’ attorney made a motion to amend his petition to include permanent injunctive relief, which was not opposed by respondents’ attorneys. The petition is also vague as to the specific statutory provision pursuant to which it is brought.
However, by complaint dated March 3, 1994, the attorney for petitioners seeks a declaratory judgment declaring the order of the Chancellor to be null and void, and thus vacated. He also asks for a preliminary and permanent injunction restraining the defendants from interfering with the right of petitioners to commence proceedings under Special Circular No. 37 of the Rules and Regulations of the City Board and the Chancellor to select a community superintendent.
Respondents’ attorney, by letter dated March 14, 1994, elected not to answer the complaint since it contained the same allegations in the petition to which they have previously responded.
Respondent Ramon C. Cortines has interposed a verified answer admitting certain allegations in the petition and denying others. He also interposes a first defense that the petition fails to state a cause of action under CPLR article 78, and a second defense that respondents’ actions were in all respects legal, proper and reasonable, and in conformity with all applicable laws and regulations, and were neither arbitrary nor capricious.
Respondents City Board of Education and City of New York have cross-moved to dismiss the petition as against them on the ground they are not necessary parties to the proceeding and that the petition fails to state a cause of action against said respondents.
The South Bronx Churches Sponsoring Committee, Inc. submitted several affidavits by residents of the community as amicus curiae in support of the Chancellor’s directive to continue the employment contract of District Superintendent Johnson. They present no legal argument to the court in support of their position.
*998 On consent of the parties, the New York City School Boards Association intervened as a petitioner, and submitted an affidavit and memorandum of law in support of petitioners’ motion for injunctive relief, which has been considered by this court.
OPINION OF THE COURT
Whether this matter is titled a declaratory judgment action or a CPLR article 78 proceeding, this court has jurisdiction to decide this matter on the merits since all the parties are before the court and a justiciable issue has been pleaded concerning interpretation of the Education Law. (See, Matter of Zuckerman v Board of Educ., 44 NY2d 336 [1978]; Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184 [1972]; Community School Bd. 26 v Macchiarola, 99 Misc 2d 219 [1979].)
CPLR 103 (c) states: "If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.”
At issue in the within proceeding is whether respondent Cortines, Chancellor of the Board of Education of the City of New York, acted properly, legally and responsibly in issuing his directive of February 9, 1994 ordering Community School Board Nine to continue to employ the current superintendent, Felton Johnson.
Community School Board Nine contends that the Community Board has the sole and exclusive right to hire, terminate and not to renew the contract of the superintendent, and that the Chancellor has violated the Decentralization Law by interfering with the power and duty of the Board to select a superintendent.
It should be noted that Education Law § 2590-l empowers the Chancellor to remove the Community School Board if it violates or fails to comply with his orders, and replace the Board with a trustee. Up to the date of argument of this motion, the Chancellor has not exercised that authority of power. There was, however, a stipulation placed on the record by the attorneys for both sides that, pending a determination by the court, the Chancellor would not disband the Community Board, and the Community Board would not hire a new community superintendent.
*999 Throughout the papers submitted to the court and during oral argument, there were allegations of impropriety and corruption on the part of Community School Board Nine as well as District Superintendent Johnson. These allegations are presently under investigation by an Independent Commission on the Integrity of School Officials, headed by former Bronx District Attorney Paul Gentile, who was designated by Bronx Borough President Fernando Ferrer.
It appears that Chancellor Cortines’ actions are motivated by a well-intentioned and sincere desire to improve the educational performance of the elementary and intermediate schools under the jurisdiction of Community School Board Nine. However, no matter how laudable his motives may be, he may not achieve them by means which exceed the authority granted him by the Legislature. (See, Community Bd. No. Six v Scribner, 78 Misc 2d 195 [1974]; Subcontractors Trade Assn. v Koch, 62 NY2d 422 [1984]; Under 21 Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344 [1985].)
The School Board has the express statutory authority to employ a community superintendent under Education Law § 2590-e, one of the most important powers delegated to the Board by current law. By hiring the superintendent, members of the Board are able to select an individual based on an educational philosophy and educational practices suitable for the district. Clearly, the superintendent’s position is crucial in the educational system.
It is significant to note that in the April 1991 report of the Temporary State Commission on New York City School Governance, also referred to as the "Marchi Commission,” then Chancellor Joseph Fernandez requested changes in article 52-A of the Education Law to give the Chancellor a veto power over the Community School Board. Interestingly, he requested the same power asserted by Chancellor Cortines in the case at bar. Significantly, in its final recommendations to the Legislature, the Marchi Commission rejected any such change in the present law, and reaffirmed the importance of the power of the community school boards to employ a superintendent of their choosing. (See, Marchi Commn Report, Apr. 1991, at 21.)
The Marchi Commission Report further reaffirmed the power of the Chancellor to suspend, remove or supersede the Community School Board as set forth in Education Law § 2590-Z. (Id., at 18-19.)
*1000 If Chancellor Cortines feels that the present Community School Board Nine cannot be entrusted with the power of managing the district’s educational affairs, including the hiring of the district superintendent, a remedy is provided to him under existing law by way of removal or suspension of the current Board. However, the Chancellor may not usurp the powers of the Community School Board by issuing an unlawful directive, and then exercise his authority to remove or suspend the Board for failure to adhere to such directive.
The Court of Appeals as recently as June of 1993, in Board of Educ. v Fernandez (81 NY2d 508), has affirmed the power of the Chancellor to issue Special Circular No. 37, which sets forth procedures to be followed by community school boards in the selection process of a community superintendent.
Petitioners have stated that they do not disagree with the provisions of Special Circular No. 37 and intend to proceed according to existing rules and regulations promulgated by the Chancellor and the City Board in the process of selecting a district superintendent. In fact, they have not foreclosed the possibility of rehiring current District Superintendent Felton Johnson, under a contract to be negotiated after the selection process is completed.
Chancellor Cortines, by denying the Community School Board the right to even engage in that selection process and directing that they have a specific district superintendent, is exceeding the limits of his statutory authority as expressly prohibited by the Court of Appeals in Board of Educ. v Fernandez (supra, at 517), wherein it stated: "We thus leave for future resolution the determination whether the chancellor [sic] is using the power of that office to assure adherence to the procedural mechanisms of the circular — which would be permissible — or whether he is effectively substituting his judgment for the community boards’ on the merits of a particular candidate.”
New York City School Boards Association, intervenor-petitioner, contends that, despite respondents’ arguments that the Chancellor’s directive is simply a conflict between a community school board’s power to select its own superintendent and the Chancellor’s power to set city-wide education policy that must be resolved in favor of the Chancellor, the actual effect of the Chancellor’s directive of February 9, 1994 is to take control over the hiring of district superintendents under the guise of setting city-wide policy, which is in direct contraven *1001 tion of the explicit legislative grant of power to local community school districts under section 2590-e (1) (a) of the Education Law.
The Chancellor’s directive of February 9, 1994, inter alia, states: "I am directing that your Board continue to employ your current superintendent for the maximum term permitted by law (one year beyond the term of your current Board).”
Nowhere in the aforesaid directive does the Chancellor state that the Community Board has failed “to comply with any applicable provisions of law, by-laws, rules or regulations, directives and agreements,” which are the only bases provided in Education Law § 2590-l (1) for the Chancellor to issue a directive that could possibly result in the suspension or removal of the Community School Board.
The respondents’ reply memorandum of law admits that: “the Chancellor does not contend that the purpose of his directive is to ferret out corruption in a particular community school district. Rather, the Chancellor’s intention is primarily to maintain a semblance of stability and continuity of leadership in a district that has been adrift for so long that it can now fairly be said to contribute to a climate of continuing public cynicism and disillusion in the entire school system * * * Therefore, the underlying reasons for the directive cover a wide array of educational concerns, and are not simply limited to a concern about corruption.”
By the Chancellor’s own admission, the basis for his directive of February 9, 1994 is not corruption on the part of Community School Board Nine or any violation by them of stated city-wide policies, but is no more than a disagreement over the educational policy that the Community School Board Nine has chosen to follow in this district.
The bitterly contested Decentralization Law was ultimately enacted in 1969 for the purpose of transferring to the community school boards the authority over educational policy in their districts that had formerly been under the direct auspices of the Central Board.
Despite the rhetoric in respondents’ papers, his actions in this particular case, if sustained by the court, would give him authority to reassert central control over educational policy in any community school district with whose policies he disagreed.
The Chancellor’s actions in this case were premature in that he exceeded his authority in directing the Community *1002 School Board Nine to renew the employment contract of a specific person.
Should the Community School Board Nine fail to follow lawful procedures in selecting its community superintendent, or should the superintendent chosen fail to meet the criteria as promulgated by the Chancellor and the City Board, then Chancellor Cortines could exercise his statutory authority as provided for in article 52-A of the Education Law.
The legislative intent of the Decentralization Law was to provide for a community voice in educational affairs through local school boards who are elected by residents of the community and parents of children who attend school in the community.
On the other hand, the Chancellor is chosen by the City Board of Education after careful scrutiny into his background in the field of education, and his accomplishments as an educator. His authority is to promote the best interests of the schools and to enforce all rules and regulations relating to management of the schools under the direction of the City Board. (Education Law § 2554 [15] [a]; § 2566 [2]; § 2590-h [17].)
The proper implementation of the Chancellor’s authority has been the subject of repeated litigation in the State courts as well as in the Federal courts. Unless the respective powers of the community school boards and the Chancellor are more specifically delineated, it is likely that further litigation of this nature will continue. Perhaps now is the time for the Legislature to consider amending article 52-A of the Education Law.
By reason of the above, the directive of Chancellor Cortines, dated February 9, 1994 is declared to be null and void and should be, and hereby is, vacated; and the respondents are enjoined from exercising their authority to remove the Board solely by reason of its failure to comply with said directive.
The cross motion of the respondents, City Board of Education and the City of New York, is hereby granted to the extent of dismissing the petition against them by reason of the fact that the pleadings contain no factual allegations to constitute a cause of action.