Breitel, J.
This appeal involves another phase of the turbulent school situation in New York City centering on the development of community school districts within the city school system (see Matter of Council of Supervisory Assns. v. Board of Educ., 23 N Y 2d 458, decided today). The issue presented is whether the city Board of Education has the power to suspend a local district board from performing its functions without notice, charges, or a hearing. The Supreme Court and the Appellate Division have concluded, without disagreement, that the city board has such power, and this court is unanimously in agreement with them.
The opinion at the Appellate Division succinctly describes the recent statutory history and the evénts and conflicts which gave rise to this litigation. It is unnecessary to repeat what was described there, but in the light of the most recent developments additional comment is appropriate.
The City of New York, like many of the cities in the State, constitutes a single school district (Education Law, §§ 2501, 2550). The city Board of Education is charged with the general management and control of educational affairs in the city school district (§ 2552), subject, of course, to the plenary powers of the State Commissioner of Education who, himself, is subject only to the control of the State Board of Regents (§§ 301, 305). The State Commissioner is, indeed, a constitutional officer, as is the State Board of Regents a constitutionally created body (N. Y. Const., art. V, § 4; art. XI, § 2); and their exclusive concern and exercise of power over the educational system has been recognized definitively by this court, subject to markedly limited judicial review as compared with other administrative agencies of government (Education Law, § 310; Matter of Vetere v. Allen, 15 N Y 2d 259, 265-267; Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 135-136; 52 N. Y. Jur., Schools, Colleges, and Universities, §§ 5, 6, 14, 15, 26).
Until quite recently local district boards empowered to function within local districts contained in a city had largely advisory functions and, subject to the city Board of Education, exercised very few limited administrative powers, and for a period between 1962 and 1968 had only advisory powers (§ 2564 [former § 2564 was added as § 2514 by L. 1947, ch. 820, renum. § 2564 by L. 1950, ch. 762, § 2, and repealed by L. 1962, ch. 615, *486 § 1], as added by L. 1962, eh. 615, § 3, and amd. by L. 1968, ch. 568, § 4).
In 1967, and again in 1968, the Legislature authorized temporary experimentation in New York City with reconstituted local district boards in defined communities to allow greater community initiative and participation in the development of educational policy for the public schools (L. 1967, ch. 484, § 2; L. 1968, ch. 568, § 1). Pursuant to the later enactment, as an interim measure, section 2564 was amended to provide: “ 2. Such board of education, upon the establishment of such local board districts, shall have the power to appoint, or provide for the election of, and remove at its pleasure, a local school board for each such local school board district, which shall consist of such number of members as the board shall determine from time to time ” (L. 1968, ch. 568, § 4). This continued in effect the removal-at-pleasure provision that had been a part of the statute since 1962 (L. 1962, ch. 615).
The city board had earlier created three such districts as school decentralization demonstration projects, and allowed the community 1 ‘ election ’ ’ of local boards, at least in the case of the Ocean Hill-Brownsville local school board district, with the aid of private funds and a private foundation. No election procedure or apparatus otherwise provided by law wás utilized (cf. § 2609; December 14, 1968 Proposed Community School District System Plan).
The Ocean Hill-Brownsville local school board was suspended on October 6, 1968 for 30 days. The suspension was further extended on November 6, 1968. It is this suspension that is the subject of the present litigation. The suspension was occasioned by the allegedly illegal ‘ ‘ dismissal ” of a number of teachers in the district, later converted into an allegedly equally illegal “ transfer ” of some of the same teachers out of the district. Concededly, the suspension of the local board was summary, without notice, charges, or hearing.
The local board argues that it was not summarily removable and, therefore, could not be summarily suspended. It emphasizes that it is an elected body, the term of which does not expire until the enabling statute expires June 30,1969 (L. 1968, ch. 568, § 6). It bolsters its argument with general theory about procedural *487 due process and urges its applicability to a governmental body such as itself.
Short shrift must be made of these contentions. Historically, and quite unchanged by the recent statutes, the control of educational affairs in this State derives from the State Board of Regents through the State Commissioner to the city Board of Education. The seat of control and responsibility lies in these, and only the Legislature, subject even then to some constitutional limitations, can change the locus. The Legislature has not done so, except to direct certain broad delegations of functions, but always subject to over-all control by the city board.
Under section 2564, as it now reads, the city board may delegate any or all of its functions to the local board, but only with the approval of the Board of Regents and then subject to any modification or rescission the city board may later effect. No such delegation had yet been effected at. the time of the initial suspension but was the subject of a proposal still to receive the sanction of the Board of Regents (L. 1968, eh. 568, § 1, subd. 3; § 4; September 4, 1968 Resolution— affecting decentralized districts ; and, see, December 14, 1968 Proposed Community School District Plan, which also requires approval by the Legislature). On October 17, 1968, however, the amended September proposal was approved by the Board of Regents.
No term of office is provided for members of the local board, and the termination date of the enabling statute may not be construed to provide one by implication. Moreover, the enabling statute is explicit, and such particularity is controlling, that the local board may be removed at the pleasure of the city board. Such power has always been construed to permit removal without cause, and, therefore, without notice, charges, or hearing (People ex rel. Gere v. Whitlock, 92 N. Y. 191, 198, 199; cf. Matter of Byrnes v. Windels, 265 N. Y. 403, 405-406; People ex rel. Percival v. Cram, 164 N. Y. 166, 169; see 67 C.J.S., Officers, § 61, p. 255). The greater power to remove of logical necessity includes the lesser power to suspend.
Nor do appellants cite to any authority that would extend procedural due process to one governmental agency as against another. It is doubtful that such a concept is relevant. Moreover, insofar as the individual board members are concerned, *488 unless there is a vested right to public office, there is no issue of due process. It is paradoxical, however, that the suspension of the local board arose from its allegedly illegal dismissal and, later, transfer out of the district, of school teachers holding tenure, and, therefore, entitled to due process before such dismissal or transfer out of the district may be. effected.*
Finally, the suspension of the local board by the city board was directed by the State Commissioner of Education because the local board had acted illegally (statement of September 14,1968, by the State Commissioner of Education).. In view of the State Commissioner’s over-all plenary power, the city board’s action was both proper and required.
In summary, in the absence of legislation giving this local board autonomy, a fixed term of office, or a tenure terminable only for cause, the board is subject entirely both as to its powers and term of office to its creating agency, the city Board of Education. The city board is granted by statute all ultimate power over the exercise of functions and the local board’s service is at the pleasure of the city board. True, under the 1968 statute and the permanent plan, yet to be approved, local boards will have a kind of tenure, but will still be subject to over-all control by the city board and subject to removal for cause (L. 1968, ch. 568, § 1, subd. 5). The hierarchy of authority under the organization of the State’s educational system is supplied initially by the Constitution and adumbrated by statute. Neither the control nor responsibility for educational affairs may be, under current legislation, irretrievably ceded to a local board by the State Board of Regents, the State Commissioner of Education, or the city board. And as part of the statutory scheme, applicable to this local board, the local board is not entitled to tenure of office or to notice, charges, or hearing before it may be suspended or removed.
*489 Accordingly, the order of the Appellate Division should he affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scile-ppi, Bergan, Keating and Jasen concur.
Order affirmed.

 It should be noted that prior to 1962 summary transfers within a local district had been authorized by statute, but not out of the district (§ 2514, as added by L. 1947, ch. 820); see September 4, 1968 Resolution, limiting all transfers. The December 14, 1968 Proposed Community School District Plan would limit only out-of-district transfers. This is the proposed permanent plan prepared pursuant .to the 1968 statute, yet to be promulgated finally by the city board or acted upon by the Board of Regents and the Legislature.