**FOX–KNAPP, INC., and Cable Industries, Inc., Plaintiffs,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY, Defendant.**

No. 88 Civ. 1780 (CSH).

United States District Court, S.D. New York.

April 14, 1989.

Bachner, Tally, Polevoy, Misher & Brinberg (Henry J. Bergman, of counsel), New York City, for plaintiff.

Bigham Englar Jones & Houston, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action for breach of contract is now before the court on defendant's motion for

summary judgment, pursuant to Fed.R. Civ.P. 56(b).

## Facts

Plaintiff Fox–Knapp, Inc. and plaintiff Cable Industries, Inc. (collectively "Fox–Knapp") are both New York corporations active in the garment industry. Cable Industries is a subsidiary of Fox–Knapp and conducts its business at the same location. Defendant Employers Mutual Casualty Company ("Employers") is an Iowa corporation. Jurisdiction derives from diversity of citizenship.

Employers insured plaintiffs against various losses pursuant to an insurance policy under which both plaintiffs are beneficiaries.

Fox–Knapp is seeking to recover for damages covered by its insurance policy with Employers, but never paid. At all times relevant to this action, Fox–Knapp operated a business at 362 Fifth Avenue in Manhattan. In August 1983, a subterranean fire broke out causing damage to plaintiffs' premises, and a prolonged electrical blackout. Fox–Knapp was forced to suspend business operations through October of that year. The fire occurred during "market week", the week firms in the garment industry receive orders that are filled throughout the coming year. Because the damage precluded plaintiffs' making any sales that year, they were forced to file for bankruptcy. In 1984, Employers paid plaintiffs for the value of the damaged samples and the physical damage to the offices. Although allegedly covered by the policy, defendant did not compensate plaintiffs for their business interruption losses.[1] This action was commenced in March, 1988.

## Discussion

On a motion for summary judgment the court evaluates "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (Rule 56 is intended to implement the rights of litigants to demonstrate prior to trial that claims "have no factual basis"). Although plaintiffs are entitled to the benefit of all reasonable doubt in determining whether a genuine issue of material fact exists, mere conjecture or speculation will not suffice to avoid summary judgment.

Employers moves for summary judgment on the grounds that the action is time-barred. New York law governs this diversity action. Defendant's motion presents the following issues: 1) the applicable limitations period on plaintiffs' claim, and 2) the question of whether defendant has waived, or is estopped from raising, the limitations defense.

### Applicable Limitations Period

The insurance contract provides that no action be commenced after one year from the loss. Insurance Policy at § 19. It further provides that if the contractual

---

**1.** Plaintiffs, in a footnote, state that defendant's failure to pay or deny liability within sixty days after proof of the loss was submitted violated N.Y.Ins.L. § 3404(e) (McKinney's 1985). Plaintiffs offer no argument as to the effect defendant's alleged failure should have on this motion. The typical penalty for an insurer's failure to comply with proof of loss requirements is that it waives what might otherwise be an absolute defense to a claim by the insured. When an insured fails to comply with proof of loss requirements, its failure is typically an absolute defense to any claim on the policy. If the insurer fails to make a timely denial, this defense is waived. *See e.g., Anthony Marino Constr. Corp. v. INA Underwriters Ins. Co.,* 69 N.Y.2d 798, 513 N.Y.S.2d 379, 505 N.E.2d 944 (1987); *Igbaro Realty Corp. v. New York Property Ins.,* 63 N.Y.2d 201, 481 N.Y.S.2d 60, 470 N.E.2d 858 (1984). *Cf.,* N.Y.Ins.L. § 3407(a) (McKinney's 1985) (provision to remedy some inequities inherent in the rule that insured's failure to comply with proof of loss requirements constituted an absolute defense to its action). Employers has not raised this defense, and Fox–Knapp has not shown why Employers' asserted failure is relevant. Moreover, plaintiffs' claim that Employers violated § 3404 is entirely inconsistent with its argument, discussed in text *infra,* that § 3404 does not apply to the contract at issue.

limitations period is contrary to the law of the state in which the insured property is located, the law of the situs governs. It is common ground that, in general, New York fire insurance contracts are governed by the Standard Fire Policy, N.Y.Ins.L. § 3404(e) (McKinney's 1985). The Standard Fire Policy is a form for such contracts, and it mandates a two year limitations period. *Id.* at § 3404(f).

The parties do not dispute that the one year limitations period provided in the insurance contract is unenforceable if the contract falls within the scope of the Standard Fire Policy. Plaintiffs argue that insurance against business interruption losses, even those caused by fire, falls outside that scope. Plaintiffs maintain that the shorter, one-year limitations period contained in the contract applies; and that, by its acts occurring thereafter, defendant has waived, or is estopped from raising, the limitations defense.[2]

The language of the Standard Fire Policy limits its coverage to "all DIRECT LOSS BY FIRE ...". *Id.* at § 3404(e). The question therefore, is whether insurance against business interruption is insurance against "direct loss by fire" within the meaning of the statute.

 Inquiry into the meaning of "direct losses" makes clear that it does not include losses due to business interruption. The text of the statute is the starting point in any question of statutory interpretation. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). While it is unclear whether the words "direct losses" include business interruption loss, the court should not impute meaningless character to them. A court should not readily assume that words in statutes are superfluous. *Bird v. United States,* 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100 (1902); *United States v. Blasius,* 397 F.2d 203, 207 (2d Cir.1968), *cert. dismissed,* 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969); *Ocean Hill–Brownsville Govern-*

*ing Bd. v. Bd. of Educ. of the City of New York,* 30 A.D.2d 447, 294 N.Y.S.2d 134 (2d Dep't 1968), *aff'd,* 23 N.Y.2d 483, 297 N.Y. S.2d 568, 245 N.E.2d 219 (1969). Given that the designation "direct losses" should be given meaning, I look to the rest of the statute for aid in its construction. Among the small print in the Standard Fire Policy is the express language that it does not cover "compensation for loss resulting from interruption of business or manufacture." N.Y.Ins.L. § 3404(e) (McKinney's 1985). Although instructive, this section alone is not dispositive of whether, if a provision covering business interruption loss is included in a contract, the two-year statutory limitations period applies to it as well as to the provisions that fall squarely under the Standard Fire Policy.

Further examination shows that the Standard Fire Policy was not intended to govern all fire insurance contracts: "appropriate forms of ... extended coverage ... *in addition to the perils covered by such standard policy,* may be approved...." N.Y.Ins.L. § 3404(d)(1) (McKinney's 1985) (emphasis added). In light of the language in subsection (e) expressly excluding business interruption losses from the perils covered, I consider the provision at issue "extended coverage" as meant by subsection (d)(1), and as such, a provision not governed by the two year limitations period of subsection (f).

There is no basis on which to conclude that the New York Legislature intended to restrict the freedom of businesses to contract into a one year limitations period with regard to interruption of business coverage. The Standard Fire Policy merely sets the minimum coverage allowable under state law. *See id.* at § 3404(f)(1)(A) (requiring "terms no less favorable to the insured" when departing from the standard form). Defendant argues that losses due to fire are not distinguishable by looking to the resultant harm, Defendant's Reply Memorandum at 3, but the statute's own

---

**2.** The apparent irony inherent in a *plaintiff* arguing for the shorter of two limitation periods is explained by the practical necessity plaintiffs face as to waiver. Defendant's acts, upon which plaintiffs rely to establish waiver, occurred after the one-year period ran, but before two years had elapsed.

categorization by that standard belies that contention. The Standard Fire Policy explicitly excludes coverage for business interruption losses, and it would be difficult to characterize a policy including such coverage, albeit with a shorter limitations period, as "less favorable to the insured" than the standard policy.

New York courts have consistently held that if a one year limitations period has been included in a fire insurance contract, the contract is enforceable, but the limitations period is extended to the two-year limitations period provided in the Standard Fire Policy. *E.g., 1303 Webster Ave. Realty v. Great American Surplus Lines Ins.*, 63 N.Y.2d 227, 481 N.Y.S.2d 322, 471 N.E.2d 135 (1984). As noted by defendant, a one year limitations period in an insurance policy covering multiple perils is enforceable as to all perils except fire. Losses due to fire are governed by the statutory provision of two years. *Bargaintown D.C. v. Bellefonte Ins.*, 78 A.D.2d 206, 433 N.Y.S.2d 809 (1st Dep't 1980). While it is true that losses resulting from hazards other than fire will not be controlled by the Standard Fire Policy, *Bargaintown* does not address differences among fire losses. I do not read *Bargaintown*, as defendant suggests I should, as holding the underlying cause of damage to be dispositive as to the applicability of the Standard Fire Policy. The real import of *Bargaintown* is its holding that contractual limitations periods may govern those portions of an insurance policy that fall outside the purview of the Standard Fire Policy. Because business interruption losses fall outside the scope of the standard policy, the one year limitations period contained in the contract governs.

*Waiver and Estoppel*

Having found the one year limitations period applicable, I now turn to the questions of waiver and estoppel. Defendant has established that the applicable limitations period has run,[3] thereby "satisf[ying] its burden of producing evidence which, if uncontroverted, is sufficient to warrant judgment in its favor." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 525 N.Y.S.2d 793, 520 N.E.2d 512 (1988). Plaintiffs now bear the burden of showing why that limitations period should not govern.

Plaintiffs argue that the one year period should not govern because defendant has waived, or is estopped from raising, the limitations defense. Defendant initiated three contacts with plaintiffs after the limitations period had run, and plaintiffs contend that these establish waiver or estoppel. The first contact was a letter of September 20, 1984 from Alexander & Alexander, an insurance broker, requesting additional documentation relating to Fox–Knapp's claim.[4] The second and third contacts were examinations of plaintiffs' executives, taken under oath, by Employers' attorney.

In order for Fox–Knapp to establish waiver, it must present evidence that Employers intended to waive its limitations defense. Under New York law it is clear that waiver can be found only where the beneficiary of the limitations period intended to waive its protection. Waiver represents "an intentional relinquishment of a known right", and it "should not be lightly presumed." *Gilbert, supra* at 969, 525 N.Y.S.2d 793, 520 N.E.2d 512.[5] In order to

---

**3.** The fire occurred in August 1983 while the complaint was filed on March 15 1988, well beyond either the one or two year limitations period.

**4.** It is well established that an insurance broker is the agent of the insured, not the insurer. *E.g., Jet Setting Service Corp. v. Toomey*, 91 A.D.2d 431, 459 N.Y.S.2d 751 (1983).

**5.** This case is similar to *Gilbert* in that, at the time of the actions giving rise to the alleged waiver, the parties were unsure of the proper limitations period, making it that much more difficult to show that Employers intentionally relinquished its "known right" to the protection of the limitations period. The Appellate Division noted this question stating: "there do not appear to be any other cases concerning the implications of a mistake made by an insurance carrier in construing a limitations period contained in a policy which it wrote." *Gilbert Frank Corp. v. Federal Ins. Co.*, 129 A.D.2d 414, 416, 514 N.Y.S.2d 215 (1st Dep't 1987), *rev'd*, 70 N.Y.2d 966, 525 N.Y.S.2d 793, 520 N.E.2d 512 (1988).

avert summary judgment, plaintiffs must show a "clear manifestation of intent by defendant to relinquish the protection of the contractual limitations period." *Id.* In *Gilbert,* the defendant insurance company had four meetings with the plaintiffs, numerous telephone conversations with them, and eventually made an offer to settle, all after the limitations period had expired. The *Gilbert* court found those facts could not support the contention that a triable issue as to intent existed. The instant motion certainly does not present circumstances more compelling of a conclusion that a triable issue as to intent exists.

Plaintiffs argue that waiver can be shown without establishing intent. New York law is to the contrary. Plaintiffs rely on *Titus v. Glens Falls Ins. Co.,* 81 N.Y. 410 (1880) for the proposition that waiver can be established as a matter of law, by showing that examinations were conducted by the defendant after the limitations period had ended. *Titus* however, presented a situation where examinations could not have been taken except by invoking a clause in the contract providing for such examinations.[6] "[Defendant] then recognized the validity of the policy ..." and could not be heard to deny that it was valid. *Id.* at 418. Even if *Titus,* decided in 1880, stood for the broad proposition advanced by plaintiffs, it must now be viewed as qualified by *Gilbert. Titus* was relied upon in the lower court's decisions in *Gilbert;* but the Court of Appeals ultimately reversed, directing that summary judgment be entered in favor of defendant insurance company. Merely establishing that defendant "require[d] the insured ... to do some act or incur some trouble or expense ..." *Titus,* 81 N.Y. at 719, is insufficient to establish waiver after *Gilbert.*

■ Under New York law, plaintiffs must make a strong showing that defendant intended to waive its rights under the contractual limitations period. In *Arkin–*

---

6. I note that the insurance contract at issue here contains a similar provision. The contract requires that Fox–Knapp submit to examinations called for by the insurance company. Insurance Policy at § 11. However, that section goes on to state: "No such examination under oath

*Medo Corp. v. St. Paul Fire and Marine Ins. Co.,* 585 F.Supp. 11 (E.D.N.Y.1982), *aff'd,* 742 F.2d 1430 (2d Cir.1983), summary judgment was entered in favor of the defendant insurance company even though it had requested to examine plaintiffs' officers under oath after the limitations period had expired. Intent being at issue, the mere fact that here the depositions were actually taken is not a meaningful distinction. Plaintiffs' showing on the issue of waiver is not sufficient to prevail.

■ With regard to estoppel, plaintiffs' showing is also insufficient. To prevail, plaintiffs must show that defendant "intended 'to lull the plaintiff into inactivity,' to 'induce it to continue negotiations until after the expiration of ... time in which an action' could be maintained". *Triple Cities Constr. Co. v. Maryland Casualty Co.,* 4 N.Y.2d 443, 176 N.Y.S.2d 292, 295, 151 N.E.2d 856, 859 (citation omitted) (1958). Plaintiffs have failed to make such a showing. Indeed, the fact that the examinations were taken after the limitations period had run, tends to negative any showing of inducement to inactivity. *See Gilbert, supra,* at 969, 525 N.Y.S.2d 793, 520 N.E.2d 512.

### Conclusion

Defendant's motion for summary judgment is granted. The clerk is directed to dismiss the complaint with prejudice.

The foregoing is SO ORDERED.

---

... shall be deemed a waiver of any defense which the Company might have with respect to any loss or claim...." *Id.* This clause was never mentioned by either party in their memoranda, and is, in any event, not necessary to the disposition of the motion.