**Amy VELEZ, Plaintiff,**

v.

**Harold O. LEVY, Jacob Goldman, Nancy Ortiz, Joyce Early, Thomas Hyland, Robert Colon, Anthony Deleo Defendants.**

**No. 02 Civ.6406 JGK.**

United States District Court,
S.D. New York.

July 29, 2003.

James I. Meyerson, New York City, for Plaintiff.

### *OPINION AND ORDER*

KOELTL, District Judge.

This action is brought by the plaintiff Amy Velez pursuant to 42 U.S.C. § 1983 for alleged violations of the plaintiff's federal constitutional rights and arises out of the plaintiff's removal as a board member on the New York City Community School District Board # 1 ("School Board # 1"). The plaintiff raises fourteen causes of action against Harold O. Levy ("Levy"), former Chancellor of the City School District of New York; Jacob Goldman ("Goldman"), Nancy Ortiz ("Ortiz"), and Joyce Early ("Early"), who are other members of School Board # 1; Thomas Hyland ("Hyland"), Deputy Director of the Chancellor's Office of Special Investigations; and Roberto Colon ("Colon") and Anthony Deleo ("Deleo"), investigators in the Office of Special Investigations, (collectively "the defendants"). The plaintiff has raised various federal constitutional claims against some or all of the defendants. The plaintiff alleges that her removal from School Board # 1, and the investigation that led up to this removal deprived the plaintiff of both liberty and property without due process of law in violation of the Fourteenth Amendment and also constituted a violation of substantive due process (Counts 1, 4, 6, 9 and 14.). The plaintiff also alleges that her removal from School Board # 1 was in retaliation for positions that she took as a community board member and in violation of the First and Fourteenth Amendments (Counts 5 and 14). In addition, the plaintiff alleges that her removal was arbitrary and capricious and in violation of the Equal Protection Clause (Count 4), and that the defendants' removal of the plaintiff from her elected office constituted an unlawful "seizure" in violation of the Fourth and Fourteenth Amendments (Count 13).[1]

The plaintiff also raises various causes of action under state law, including a claim under the New York State Constitution (Count 2); claims for negligence (Counts 3 and 8); a claim asserting a "right to conciliation" under the New York State Constitution and New York State law (Count 7); a claim for defamation (Count 10); a claim for malicious abuse of civil process (Count 11); and a claim for intentional infliction of emotional distress (Count 12).

The defendants have now moved to dismiss all of the federal constitutional claims arguing, among other things, that the plaintiff cannot state a claim for relief under the relevant constitutional provisions, and that, in any event, the defendants are entitled to qualified immunity dismissing the federal claims against them in their personal capacity for the actions related to the investigation and removal of the plaintiff.[2] The defendants also argue that the Court should not exercise supplemental jurisdiction over the state law claims, if the federal constitutional claims are dismissed.

### I.

On a motion to dismiss, the allegations in the Complaint are accepted as true.

---

1. As explained below, the plaintiff has recharacterized the claim in Count Four alleging a violation of the Equal Protection and Due Process clauses as simply a claim for a violation of procedural due process. At the argument of the current motion, the plaintiff conceded that there is no separate Equal Protection claim.

2. While the plaintiff sued the defendants in their personal and official capacities, at the argument on the motion, the plaintiff made it clear that the plaintiff wanted to put to one side any claims against the defendants in their official capacity. In any event, for the reasons explained below, the plaintiff has failed to state federal claims against the defendants in any capacity.

See *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences are drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' motion to dismiss should only be granted if it appears that the plaintiff can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065.

Accordingly the following facts are alleged in the Complaint and are accepted as true for the purposes of this motion.

The plaintiff, Amy Velez, is a resident of the Lower East Side of Manhattan, and prior to her removal, was an elected member and treasurer of the New York City Community School District Board # 1 ("School Board # 1"). (Compl.¶ 9.) The plaintiff was elected to her position in May, 1999 for a term of three years, and her term was later extended by one year, by the state legislature (Compl.¶¶ 2, 22, 26.) School Board # 1 is charged with the responsibility of overseeing the delivery of educational services to elementary and middle school students who attend public schools within its geographic district. (Compl.¶ 25.) Nancy Ortiz, Jacob Goldman, and Joyce Early are other members of School Board # 1 and are known to have taken positions against and opposed positions taken by the plaintiff.

(Compl.¶ 11.) The plaintiff voted against the appointment of Ortiz to the board, but Ortiz was eventually placed on the board by Chancellor Levy. (Compl.¶ 11.) The plaintiff's opposition to Ortiz and to the policies of Levy was widespread and well known. (Compl.¶¶ 166–68.)

On January 23, 2002 a working session of School Board # 1 was held at P.S. # 137. (Compl.¶ 27.) There had been contention at the meeting about Chancellor Levy's diversity policy regarding selection of students for a particular school under the control of School Board # 1. (Compl.¶ 29.) The plaintiff opposed the position taken by Chancellor Levy, and the plaintiff's alternative proposal was opposed by Ortiz, Goldman, and Early. (*Id.*) The Office of the Acting Superintendent was located down the hall from where the meeting of School Board # 1 was being held. (Compl.¶ 28.) After the meeting was over, Early accused the plaintiff of placing "sand" in front of the Acting Superintendent's door. (Compl.¶ 41.)

On January 24, 2002, Goldman, Ortiz and Early wrote a letter to Levy accusing the plaintiff of placing a foreign sand or powder-like substance near the door of the Acting Superintendent. (Compl. ¶ 45.) In this letter, Goldman, Ortiz and Early accused the plaintiff of, among other things, harassment and criminal and illegal conduct. (Compl.¶ 46.) The letter requested that Levy remove the plaintiff from School Board # 1. (Compl.¶ 46.) An article appeared in the *New York Daily News* on January 25, 2002 in which the circumstances surrounding the alleged incident were reported and referred to the sprinkling of "foul smelling" and "voodoo" powder by the plaintiff. (Compl.¶ 48.) The information for the article was allegedly provided by the defendants Goldman, Ortiz and Early, and the plaintiff contends that those defendants knew or should have

known that the allegations and information provided for that article were baseless. (Compl.¶ 50.)

The accusations against the plaintiff were also repeated on the radio and on various television news programs on January 25, 2002, and the information for those news and television reports was also allegedly provided by Goldman, Ortiz and Early with the intention of harming the reputation of the plaintiff. (Compl.¶¶ 52–54.)

The Chancellor's Office of Special Investigations commenced an investigation into the allegations against Ms. Velez on January 28, 2002. (Compl.¶ 55.) Levy allegedly pursued personal and political ends in seeking to remove the plaintiff and in pursuing an investigation of apparently baseless allegations. (Compl.¶¶ 60–69.) The investigation, which was conducted by Thomas Hyland, Anthony DeLeo, and Robert Colon, resulted in a report dated February 11, 2002. (Compl.¶¶ 2, 71–72.) The report concluded that "the allegations that Amy Velez, a member of Community School Board # 1, placed a suspicious powder in front of [the Acting Superintendent's] door on January 23, 2003 is substantiated with corroboration from Nancy Ortiz." (Compl.¶ 150). The report was allegedly biased against the plaintiff as a result of the plaintiff's prior opposition to the policies of Levy and other members of School Board # 1; moreover, its conclusions regarding the plaintiff's conduct were allegedly baseless and speculative. (Compl.¶¶ 73–76, 134–35, 146–48, 151–57.) Ortiz was the only person interviewed who claimed to have seen the plaintiff place any powder or substance near the Acting Superintendent's door. (Compl.¶¶ 92–99, 140–41.) Goldman's and Early's knowledge of the incident was based solely on information received from Ortiz, although they both observed the substance in front of the door. (Compl.¶ 110.) The custodi-

an described being asked by an unidentified female to clean up the substance, which he did, and the unidentified female then took a ziplock bag with some of the substance with her. (Compl.¶¶ 87–90.) Ortiz admitted to taking the ziplock bag with the substance, and, along with Goldman and Early, seeing that it was kept overnight. (Compl.¶¶ 98–99.) The parties agreed at argument that the substance was turned over to the investigators. The allegations made by Goldman, Ortiz and Early were allegedly baseless and speculative and not based on any credible evidence. (Compl.¶¶ 143–45, 173.)

In reliance on the report, Levy removed the plaintiff from her position on School Board # 1 on March 15, 2002. (Compl.¶¶ 151, 158.) In his decision to remove the plaintiff, Levy, without any basis, suggested that the plaintiff's actions were "criminal" in nature. (Compl.¶¶ 175–76, 192, 199–200, 207.) In removing the plaintiff, Levy failed to engage in a "conciliation" process. (Compl.¶¶ 176–82, 197, 204–05.) The plaintiff was allegedly stigmatized as a result of her removal, the allegations and the investigation into her conduct. (Compl.¶¶ 187–88.)

On March 27, 2002 the plaintiff appealed Levy's decision, and sought a stay of her removal and reinstatement to her previous position. (Compl.¶ 210.) On April 26, 2002 a three member panel of the Board of Education of the City School District of the City of New York issued an order reinstating the plaintiff to her position pending resolution of the appeal. (Compl.¶ 211.) The three member panel reversed "in all respects" the decision of the Superintendent and granted the plaintiff's appeal. (Compl.¶ 213.) On June 19, 2002 the full Board of Education unanimously ratified and adopted the decision of the three member panel. (Compl.¶ 214) The full Board of Education adopted the

findings of the three member panel, which had found, among other things, that

> [t]he possibility that irrational considerations entered into this investigation and affected its conclusion is too strong to ignore. The admission that conversations with political figures played a role in the process, ... [and] the undue reliance on Ms. Ortiz' position as proof of her credibility ... compel the conclusion that the Chancellor's order was arbitrary and capricious.

(Compl.¶ 215.) The panel also concluded that the investigative report was "grossly flawed and could not rationally be relied upon by anyone to support the finding contained in the Chancellor's order." (*Id.*)

As a result of all of these events, the plaintiff suffered embarrassment, mental anguish, humiliation, fear and other emotional distress. (Compl.¶ 217.) The events also allegedly caused the plaintiff to suffer stigma at work and home and in her community. (Compl.¶¶ 219–220.)

The plaintiff raised various constitutional claims against some or all of the defendants. The first cause of action alleges that the investigation conducted by Hyland, Colon and Deleo violated the Fourteenth Amendment. (Compl.¶¶ 225–230.) The fourth cause of action alleges that the plaintiff's removal by Levy was arbitrary and irrational and violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. (Compl.¶¶ 237–239.) The fifth cause of action alleges that Levy's removal was in retaliation for activities that are protected under the First Amendment. (Compl.¶¶ 241–245.) The sixth cause of action alleges that the actions by Levy, and the investigation by Hyland, DeLeo and Colon violated the plaintiff's procedural and substantive due process rights under the Fourteenth Amendment. (Compl.¶¶ 246–249.) The ninth cause of

action alleges that the actions of Goldman, Ortiz, and Early violated the plaintiff's Fourteenth Amendment rights. (Compl.¶¶ 256–258.) The thirteenth cause of action alleges that all of the defendants violated the plaintiff's rights to be free from an unlawful search and seizure under the Fourth Amendment. (Compl.¶¶ 270–273.) The fourteenth cause of action alleges that all of the defendants violated the plaintiff's rights under the First and Fourteenth Amendments. (Compl.¶¶ 274–278.) Each of the alleged constitutional violations is asserted to be a violation of 42 U.S.C. § 1983. The defendants have now moved to dismiss all of these federal constitutional claims.

## II.

### A.

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must satisfy two elements: "First the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (*citing Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)); *see also Finley v. Giacobbe,* 79 F.3d 1285, 1296 (2d Cir.1996); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In this case, the parties have not disputed that the alleged actions by the defendants were done under color of state law. The plaintiff has alleged that she was deprived of several constitutional rights, under the First, Fourth, and Fourteenth Amendments.

### B.

The plaintiff has raised five causes of action that allege violations of the Fourteenth Amendment, namely Counts One,

Four, Six, Nine, and Fourteen. Of these five causes of action, only Counts four and six explicitly identify which clauses of the Fourteenth Amendment are alleged to have been violated—the fourth cause of action alleges a violation of the Equal Protection and Due Process clauses and the sixth cause of action alleges a violation of substantive and procedural Due Process. In their papers in support of their motion to dismiss, the defendants characterized these five causes of action as alleging procedural due process violations, and noted that the sixth cause of action also alleged a violation of substantive due process. Without any attempt to differentiate the various counts, the plaintiff's papers in response to the motion to dismiss discuss all of these causes of action together. The plaintiff's papers, however, did not dispute the defendants' characterization, and implicitly adopted this characterization by referring to these five causes of action collectively as "The Fourteenth Amendment Procedural Due Process Claims." The plaintiff also indicated that the plaintiff was alleging a violation of substantive due process and did not indicate that there was a separate claim under the Equal Protection clause, and indeed at oral argument on this motion the plaintiff conceded that the plaintiff was not asserting an Equal Protection claim. The Court, therefore, will evaluate Counts One, Four, Six, Nine and Fourteen as claims alleging violations procedural due process.[3] The Court will separately evaluate Count Six also as a claim alleging a violation of substantive due process. *See infra* § II(C).

The plaintiff has alleged that she was deprived of both liberty and property without due process. The plaintiff alleges that her removal from School Board #1 de-

prived the plaintiff of a protected property interest, and in addition, the public disclosure of the investigation and report of Hyland, Deleo, and Colon, based on the baseless allegations of Goldman, Ortiz, and Early, and the statements of Levy, in connection with the plaintiff's removal, stigmatized the plaintiff, and thereby deprived the plaintiff of liberty without due process.

■■■ To state a procedural due process claim, a plaintiff must establish (1) a deprivation of life, liberty or property; and (2) without due process of law. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (describing the "familiar two-part inquiry" in which a court "must determine whether [the plaintiff] was deprived of a protected interest, and if so, what process was he due."); *Narumanchi v. Bd. of Trustees,* 850 F.2d 70, 72 (2d Cir.1988). "An essential principle of due process [is] that deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Thus, "some kind of hearing" is required, but the nature of the hearing may vary "depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Loudermill,* 470 U.S. at 542, 545, 105 S.Ct. 1487 (quotations omitted).

■■■ The plaintiff alleges that she had a property interest in her position on School Board #1 and a property interest in being able to serve the full three year term to which she was elected. Property

---

**3.** Count Fourteen also alleges a violation of the First Amendment, and that allegation is

evaluated below. *See infra* § II(E).

interests are "created and their dimensions are defined by existing rules or understandings that stem from an individual source such as state law...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The plaintiff's due process claims for an allegedly unconstitutional deprivation of property must be dismissed, because New York law clearly establishes that there is no cognizable property right in an elected public office. In New York, public officials have "no contractual, vested or property right" in the office they hold. *Lanza v. Wagner*, 11 N.Y.2d 317, 229 N.Y.S.2d 380, 183 N.E.2d 670, 673 (1962). As an elected public official, the plaintiff had no property right in her position on School Board # 1. *See Warden v. Pataki*, 35 F.Supp.2d 354, 362–63 (S.D.N.Y.) *aff'd sub nom Chan v. Pataki*, 201 F.3d 430 (2d Cir.1999); *see also Ocean Hill–Brownsville Governing Bd. v. Bd. of Ed. of City of New York*, 23 N.Y.2d 483, 297 N.Y.S.2d 568, 245 N.E.2d 219, 221–22 (1969); *Ramos v. Cortines*, 216 A.D.2d 199, 628 N.Y.S.2d 662, 662–63 (1st Dep't 1995). Consequently, the removal of the plaintiff from School Board # 1 did not deprive her of property and was not a violation of procedural due process based on an alleged deprivation of a property interest without due process.

The plaintiff also alleges that the plaintiff suffered a deprivation of liberty, because of the stigmatizing effects of public disclosures of the results of the investigation into her conduct and the public disclosures made by Levy in connection with her removal. A defamatory statement about a public employee "implicates a liberty interest when it is made during the course of that employee's termination from employment." *See Donato v. Plainview–Old Bethpage Central School Dist.*, 96 F.3d 623, 633 (2d Cir.1996). If "a government employee is dismissed for stigmatizing reasons that seriously imperil [the employee's] opportunity to acquire future employment, the employee is entitled to an opportunity to refute the charge." *Id.* at 633 (quotations omitted). If an employee's liberty interest is implicated in this manner, the only process that the employee is due is a subsequent name-clearing hearing. *Id.*[4]

To state a claim for the deprivation of liberty in this context, a claim that is often known as a "stigma plus" claim, the plaintiff must allege (1) stigmatizing statements by government officials; (2) the loss of government employment; (3) publication of those statements; and (4) the falsity of those stigmatizing statements. *See Duran v. City of New York*, No. 96 Civ. 4219, 1998 WL 603212, at *8–9 (S.D.N.Y. Sept. 11, 1998). In this case, the defendants do not dispute that the public comments made in connection with the investigation and the removal of the plaintiff were of a kind that would implicate a protected liberty interest, but instead, contend that the subsequent appeals process that the plaintiff took advantage of was sufficient to satisfy due process require-

---

4. In *Donato*, the plaintiffs did not receive a name-clearing hearing. Therefore, there was a sufficient showing of a violation of procedural due process. On remand, the district court was instructed to assure that the plaintiff was accorded such a hearing. If this hearing determined that the charges were true, that ended the matter. If the hearing determined the charges to be false, the district court was directed to consider the factual and legal merits of the plaintiff's claim for damages. *Donato*, 96 F.3d at 633. In this case, there can be no claim for damages because, as explained below, the plaintiff was given the name clearing hearing to which she was entitled and therefore there was no violation of procedural due process for which the plaintiff could seek damages.

ments.[5] The appeals process that the plaintiff took advantage of not only allowed the plaintiff to contest the findings of the investigative report, but also her removal from office, and as a result of this process, the plaintiff was restored to School Board # 1. A name-clearing hearing satisfies due process if the hearing allows the employee to remove stigmatizing allegations from her employment record and allows the employee to seek further employment, even if the employee is not reinstated. See Donato, 96 F.3d at 633 (noting that a sufficient name-clearing hearing reduces the risk that dismissal is accompanied by stigmatizing allegations in the employee's personnel file and that "[t]he employer need not rehire the employee even if she can prove the inaccuracy of the stigmatizing allegations.") In this case, the appeals process provided the plaintiff with sufficient opportunity to clear her name, as well as the additional opportunity to be reinstated to her prior position. The plaintiff's reinstatement and the finding that the investigative report and Chancellor Levy's removal of the plaintiff, based on a non-credible investigation, was arbi-

trary and capricious was adequate to ensure that the plaintiff's future employment as a public official is not imperiled and provided the plaintiff with sufficient due process. See, e.g., Poole v. Bd. of Trustees of Cayuga Comm. College, No. 96 Civ. 0681, 1998 WL 661540, at *7 (N.D.N.Y. Sept. 25, 1998) (Pooler, C.J.); Duran, 1998 WL 603212, at *11; cf. Rivera v. Comm. School Dist. Nine, Nos. 00 Civ. 8208, 01 Civ.1976, 2002 WL 1461407, at *7 (S.D.N.Y. July 8, 2002) (finding availability of Article 78 proceeding under New York State law, which permits challenges to defamatory remarks made by school officials, constitutes sufficient name-clearing hearing to satisfy due process).[6]

Because the plaintiff did not have a protected property interest in her position on School Board # 1, and the plaintiff received sufficient process for any alleged deprivation of liberty, the plaintiff cannot state a claim under the Fourteenth Amendment for a violation of procedural due process. The plaintiff's claims for procedural due process, namely Counts One, Four, Six, Nine and Fourteen, are dismissed.[7]

---

**5.** In any event, the statement by Levy that the plaintiff's conduct was plausibly "criminal" is sufficient to constitute a stigmatizing statement. See, e.g., Duran, 1998 WL 603212, at *8.

**6.** To the extent that the plaintiff argues that she was entitled to a pre-deprivation hearing, this argument has no merit. A post-deprivation name clearing hearing is sufficient to satisfy due process in this case. See Donato, 96 F.3d at 633; Rivera, 2002 WL 1461407, at *7; Duran, 1998 WL 603212, at *8–9, *11 (collecting cases).

**7.** The plaintiff, in the Complaint and in the responsive papers opposing the defendants' motion, repeatedly alleges that the investigation conducted by the defendants Hyland, Colon, and Deleo, and the decision by Levy to rely on that investigation, was, among other things, arbitrary, capricious, contrary to law, and irrational. The plaintiff's allegation in this

regard is not based on her removal or stigma that resulted, but on the investigation or reliance on an unlawful investigation itself. To the extent that the plaintiff argues that a deprivation of liberty or property occurred because of an arbitrary, capricious, or unlawful decision by Levy to rely on the investigation, the plaintiff received whatever process was due because the plaintiff was provided with access to the appeals process outlined in the New York State Education law, and has not alleged that there was any error in those proceedings. Cf. Warden, 35 F.Supp.2d at 363; Venes v. Comm. Sch. Bd. of District 26, 373 N.E.2d 987, 990 n. * (N.Y.1978). In that appeals process, the conclusions of the investigation and its report were found to be arbitrary and capricious, and the Chancellor's decision based on the investigator's report was overturned, and the plaintiff was reinstated to School Board # 1. Thus, because of the full process that the plaintiff received, the

### C.

The plaintiff in Count Six alleges a violation of substantive due process. This allegation is based on the same alleged facts and circumstances that give rise to the plaintiff's claims for violations of procedural due process, namely the plaintiff's removal from office and the stigma from the removal. It is well established that "if a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); *see also Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.") (quotations omitted). Thus, to the extent that the plaintiff's substantive due process claim is based on the same allegations that give rise to the plaintiff's Fourteenth Amendment procedural due process claims, the underlying allegations must be analyzed under the relevant standards for a procedural due process claim, which are explained above, rather than standards that govern a claim for substantive due process. Consequently, because the plaintiff's Fourteenth Amendment due process claims are being dismissed, the claim alleging a violation of substantive due process is also dismissed.

### D.

The defendants have also moved to dismiss the plaintiff's First Amendment claims, Counts Five and Fourteen. The plaintiff has alleged that her removal from her position on School Board # 1 was in retaliation for positions that she took in opposition to the policies of Levy and while serving as a member of School Board # 1.

It is well-established that a public employer cannot retaliate against an employee for the exercise of the employee's First Amendment free speech rights. *Rankin v. McPherson*, 483 U.S. 378, 383–84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1057–58 (2d Cir.1993); *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 780 (2d Cir.1991). To determine whether an adverse employment decision violates a government employee's right to free speech, the employee must show (1) that the speech at issue was constitutionally protected and (2) it was a substantial or motivating factor in the adverse employment decision. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *White Plains Towing Corp.*, 991 F.2d at 1057–59; *see also Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir.1996).

The plaintiff's First Amendment claims must be dismissed because the speech of the plaintiff was not constitutionally protected. The Court of Appeals has explained that "there generally is no First Amendment violation where the plaintiff is a policymaker." *Camacho v. Brandon*, 317 F.3d 153, 161 (2d Cir.2003). In *Camacho*, the plaintiff, a legislative aide to a

---

plaintiff could not maintain a due process claim arguing that the investigation, report resulting from such an investigation, or decision by the Chancellor was arbitrary, capricious, or otherwise unlawful.

Yonkers City Council member, brought a First Amendment retaliation claim against the City of Yonkers, the Mayor of the City of Yonkers, and two City Council members, alleging that his termination was in retaliation for the First Amendment activity, namely the dissenting vote cast, of the Council member for whom he worked. *See id.* at 156–58. The Court of Appeals found that the plaintiff's First Amendment claim depended upon whether the Council member himself had a valid First Amendment claim. *Id.* at 160. The Council member was found to be a "quintessential policymaker" because Council members are perceived as policymakers by the public, they are elected officials, subject to political and partisan pressure, and their votes influence government programs. *Id.* at 162. As a result, the Court found that because the Council member "was a policymaker, [his] First Amendment claim could not succeed if [the defendants] retaliated against [the plaintiff] for his political associations as well as his votes." *Id.*

This case falls within the general rule announced by the Court of Appeals in *Camacho.* The plaintiff in this case was also a "quintessential policymaker" because, as the Complaint alleges, the plaintiff responded to and felt political pressure, the plaintiff's votes on School Board # 1 affected important education policies for schools in that district, and as an elected official, the plaintiff is perceived as a policymaker who represents the interest of various constituencies within her district. (*See* Compl. ¶¶ 11, 22, 25, 29, 61–62, 68.); *see also* N.Y. Educ. Law. § 2509–e (noting that community boards have the power to employ a community superintendent, promote achievement of educational standards and objectives relating to the instruction of students, and have other powers and duties). The plaintiff has alleged that the defendants retaliated against the plaintiff for actions and positions that the plaintiff took as a policymaker, namely votes that she cast or positions that she took in opposition to the actions of other policymakers such as Levy or the other members of School Board # 1. Under these circumstances, the plaintiff acted as a policymaker and was subject to retaliation for that activity without violating her First Amendment rights, and thus the First Amendment claims must be dismissed. *See Camacho*, 317 F.3d at 153 (noting that allowing First Amendment retaliation claims where the alleged protected activity involved political activity and opposition between policymakers, would "subject to litigation all manners and degrees" of conduct directed at public officials). Counts Five and Fourteen are therefore dismissed.

E.

The plaintiff also alleges a claim for a violation of the Fourth Amendment, based on the fact that because the plaintiff was removed from School Board # 1, the plaintiff's office, or position, was seized.[8] This claim is entirely without merit, and is dismissed. The seizure of the plaintiff's "office" in connection with her removal was not a "seizure" for the purposes of the Fourth Amendment that would entitle the plaintiff to the protections of the Fourth Amendment. The plaintiff can only raise a Fourth Amendment claim alleging an illegal seizure if the plaintiff herself was seized or had some property interest in the thing that was allegedly seized. As the Supreme Court has explained, "[a] 'seizure' of property . . .

---

**8.** It is clear from oral argument that the plaintiff's claim is based on a seizure of the plaintiff's position rather than the physical office that she occupied as a result of having that position.

occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). There is no authority to suggest that an individual has any possessory interest in the position that the individual was no longer entitled to, albeit temporarily, as a result of that individual's removal from the position. In addition, the plaintiff could not have had any property interest in an elected position in which she had no cognizable property right. *See supra* § II(B). Because there is no basis for any claim that the seizure of the plaintiff's office constituted a violation of the Fourth Amendment, Count Thirteen is dismissed.

### F.

 The defendants have also moved to dismiss the plaintiff's federal constitutional claims against them in their personal capacities on the basis of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. That unlawfulness must be apparent." *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997) (quotations omitted); *see also Saucier v. Katz,* 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Durven D. v. Giuliani,* No. 98 Civ. 0523, 2000 WL 1145425, at *8 (S.D.N.Y. Aug. 11, 2000).

As explained above, the defendants' conduct, as alleged, did not constitute a violation of either the First or Fourth Amendments, or procedural or substantive due process. Consequently, with respect to these claims, the defendants could not have violated the clearly established constitutional rights of the plaintiff, and they are entitled to qualified immunity. Moreover, it could hardly be said in view of the analysis explained above that reasonable officials would have understood that their conduct violated the plaintiff's constitutional rights. Therefore, the defendants are entitled to qualified immunity for any constitutional claim against them in their personal capacities.

### CONCLUSION

The remaining arguments are either moot or without merit. For the reasons explained above, the plaintiff's § 1983 claims alleging violations of federal constitutional rights are dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Clerk is directed to enter Judgment and to close this case.

**SO ORDERED.**